213 P.3d 619 (2009)
Evelyne GRUNDY, Respondent/Cross Appellant,
v.
The BRACK FAMILY TRUST, Calvin Brack and Joyce M. Brack, Trustees, Appellants/Cross Respondents.
No. 37251-7-II.
Court of Appeals of Washington, Division 2.
August 11, 2009.
*620 Alexander Weal Mackie, Eric S. Merrifield, Perkins Coie LLP, J. Christopher Baird, Attorney at Law, Seattle, WA, for Appellant/Cross-Respondent.
Allen T. Miller, Attorney at Law, Olympia, WA, for Respondent/Cross-Appellant.
VAN DEREN, C.J.
¶ 1 The parties ask us to fashion new law regarding sea water and bulkheads. The Bracks[1] ask us to create an exception to trespass law for sea water, similar to the common enemy doctrine, which our Supreme Court in Grundy v. Thurston County, 155 Wash.2d 1, 10, 117 P.3d 1089 (2005) expressly held to be inapplicable to sea water. Evelyn Grundy asks us to articulate a rule that would essentially require that all property owners along Puget Sound and, necessarily, along all ocean shores, construct bulkheads the same height as their neighbors' bulkheads to avoid trespass liability for waves *621 splashing sea water on their neighbors' properties.
¶ 2 We refuse the invitation to create new law and hold that, under the facts of this case, the Bracks are not liable for trespass for acts that the trial court found were neither intentional nor wrongful and that caused de minimis damage to Grundy. We reverse.

FACTS
¶ 3 The Bracks purchased property on Johnson Point in Thurston County in 1991. Evelyne Grundy has resided on property adjacent to the Bracks' land since 1981. In 1997 or 1998, the Bracks placed sandbags behind their existing bulkhead. In 1999, the Bracks raised their bulkhead's height approximately 18 to 21 inches.
¶ 4 Before the Bracks raised their bulkhead, it was approximately 12 inches lower than Grundy's bulkhead and "water from Puget Sound would intermittently overtop [the Bracks'] bulkhead and flood the lower portion of [their] property ... during winter months in conjunction with high tides and weather events producing high winds." Clerk's Papers (CP) at 880. After the Bracks raised their bulkhead, water would "cours[e] along the raised portion of the [Bracks'] bulkhead" and would "find[] entrance" once it reached Grundy's property. Though some wave splash entered Grundy's property during winter months before the Bracks raised their bulkhead, "the intensity and amount of the invasion from this splash increased after the Brack bulkhead was raised." CP at 881.
¶ 5 Grundy originally brought a nuisance claim against the Bracks.[2]Grundy, 155 Wash.2d at 4, 117 P.3d 1089. The trial court granted summary judgment to the Bracks, finding that Grundy "did not timely seek review under the Land Use Petition Act." Grundy, 155 Wash.2d at 5, 117 P.3d 1089. We affirmed, holding in part that the common enemy doctrine applied and, therefore, the Bracks were entitled to protect their land from sea water.[3]Grundy v. Brack Family Trust, 116 Wash.App. 625, 67 P.3d 500 (2003), rev'd sub nom. Grundy v. Thurston County, 155 Wash.2d 1, 117 P.3d 1089 (2005). The Supreme Court reversed, holding that the common enemy doctrine applies only to surface water and does not apply to sea water. Grundy, 155 Wash.2d at 8-10, 117 P.3d 1089.
¶ 6 On remand, Grundy added trespass by water and illegal diversion claims. Grundy requested abatement of the Bracks' raised bulkhead and damages "for repair of landscaping following repeated flooding as well as for fear and anguish caused by repeated flooding and the possibility of losing [her] home."[4] CP at 273.
¶ 7 The trial court concluded that the Bracks had a duty to not cause sea water to trespass onto Grundy's property. The trial court also found:
25. ... [Grundy] has only experienced minor water intrusion as a result of the raising of the [Bracks'] seawall....
26. ... [I]n the absence of a cap on her bulkhead, sea spray and splash causes occasional *622 debris and yellowed and dead grass on a portion of [Grundy's] property... [and] this limited debris and yellowed and dead grass on [Grundy's] property has been caused, on certain occasions, by high wind and waves amplified by the increase in height of [the Bracks'] bulkhead.
....
34. ... [T]he raising of the bulkhead on [the Bracks'] property has not caused a significant injury or appreciable harm to [Grundy] or [Grundy's] property
....
36. ... [R]aising of [the Bracks'] bulkhead did not proximately cause a significant compensable injury to [Grundy], other than contributing to the deposit of debris on a portion of [Grundy's] property and areas of yellow and dead grass[.]
....
44. The Court finds a water trespass of a limited nature that the Court finds is attributable to water intrusion and sea spray associated with increased energy resulting from the increase of [the Bracks'] bulkhead.
44a. The Court's definition of water intrusion includes jetsam, flotsam and debris left by water; but the Court specifically finds that the term does not include flooding.
....
46. ... [T]he water trespass ... could be averted or remedied by the placement of a "cap" or "lip" atop [Grundy's] bulkhead....
47. Based on the post trial representations of the parties the installation of a cap or lip will cost approximately $16,000[].
CP at 883-87.
¶ 8 The trial court concluded that Grundy had not suffered a private nuisance because the Bracks had not "unreasonably annoyed, injured or endangered her comfort, repose[,] health or safety or substantially interfered with her use of property." It further concluded that Grundy "failed to carry her burden of showing that [the Bracks'] raising of their bulkhead caused flooding of [her] property." CP at 889. It found, however, that the Bracks "raised their bulkhead without considering the consequences to Grundy" and that "water thereby intruded onto [Grundy's] property." Further, it concluded that Grundy "has established water trespass in that the Court finds that debris and yellowed and dead grass on [Grundy's] property has been proximately caused[] by water intrusion and sea spray from high wind and waves amplified by the increase in height of [the Bracks'] bulkhead."[5] CP at 891. The trial court found that the Bracks' actions were neither intentional nor wrongful.
¶ 9 The trial court determined that "abatement of the increase in [the Bracks'] bulkhead would not be an appropriate equitable remedy" because "removing the increased portion ... could be considered environmentally unsound due to the impact of fine sediments on fish habitats and other impacts associated with excavation and cutting concrete along the shoreline." CP at 885. It awarded Grundy $16,000 as an "exercise [of] its equitable powers." CP at 891. The trial court also awarded Grundy $22,500 in attorney fees "pursuant to RCW 4.24.630." CP at 888.
¶ 10 The Bracks appeal.

ANALYSIS

I. Common Enemy Doctrine
¶ 11 The common enemy doctrine originated in England in approximately 1828, in response to flooding caused by sea water. See Lamb v. Reclamation Dist. No. 108, 73 Cal. *623 125, 130, 14 P. 625 (1887) (citing Rex v. Commissioners, (1828) 8 Barn. & C. 355 (K.B.)); see also Weaver v. Bishop, 206 Cal. App.3d 1351, 1356, 254 Cal.Rptr. 425 (1988). Washington courts first applied the common enemy doctrine in Cass v. Dicks, 14 Wash. 75, 44 P. 113 (1896). In Cass, our Supreme Court held that "surface water, caused by the falling of rain or the melting of snow, and that escaping from running streams and rivers, is regarded as an outlaw and a common enemy against which anyone may defend himself, even though by so doing injury may result to others." It explained that "such water is a part of the land upon which it lies, or over which it temporarily flows, and that an owner of lands has a right to the free and unrestrained use of it." Cass, 14 Wash. at 78, 44 P. 113. The Cass court recognized that sea water was also a common enemy when it further articulated:
"If a land[-]owner whose lands are exposed to inroads of the sea, or to inundations from adjacent creeks or rivers, erects sea-walls or dams, for the protection of his land, and by so doing causes the tide, the current, or the waves to flow against the land of his neighbor, and wash it away, or cover it with water, the land-owner so causing an injury to his neighbor is not responsible in damages to the latter, as he has done no wrong, having acted in self-defense and having a right to protect his land and his crops from inundation."
Cass, 14 Wash. at 79, 44 P. 113 (emphasis added) (quoting Edward P. Weeks, Damnum Absque Injuria 3-4 (1879)).
¶ 12 We have found no Washington cases directly dealing with trespass by sea water since the introduction of the common enemy doctrine, until this one. No previous Washington case (1) excluded sea water from the definition of surface water or (2) excluded sea water from the application of the common enemy doctrine. But in 2005, our Supreme Court expressly held that the common enemy doctrine does not apply to sea water. Grundy, 155 Wash.2d at 10, 117 P.3d 1089. It restricted "the common enemy doctrine to surface water" and noted that "`[t]he chief characteristic of surface water is its inability to maintain its identity and existence as a body of water.'" Grundy, 155 Wash.2d at 10, 117 P.3d 1089 (quoting Halverson v. Skagit County, 139 Wash.2d 1, 15, 983 P.2d 643 (1999)). Because "[s]torm-driven waves in Puget Sound remain part of a definite and identifiable body of water when splashing onto waterfront property," the court held that these waves are not surface water. Grundy, 155 Wash.2d at 10, 117 P.3d 1089. The court characterized "[t]he mention of seawater in [Cass as] obiter dictum and [it was], therefore, not controlling" because the facts in Cass did not "concern[] protection of land from the sea." Grundy, 155 Wash.2d at 9, 117 P.3d 1089. It did not address the implications or application of its holding in actions concerning sea water splashing onto neighboring properties.[6]

*624 II. Trespass
¶ 13 The Bracks argue that "[w]ave spray from Puget Sound ... does not constitute a trespass." Br. of Appellant at 13 (emphasis omitted). They allege that "[n]o Washington court has held that marine waters, let alone sea spray, entering waterfront property constitutes trespass" and encourage this court to "decline to make new law." Br. of Appellant at 13-14.
¶ 14 "[T]respass" is an "`interfere[nce] with the right to exclusive possession of property.'" Gaines v. Pierce County, 66 Wash.App. 715, 719, 834 P.2d 631 (1992) (internal quotation marks omitted) (quoting Bradley v. Am. Smelting & Ref. Co., 104 Wash.2d 677, 690, 709 P.2d 782 (1985)). The concept of trespass includes trespass by water. Phillips v. King County, 136 Wash.2d 946, 957 n. 4, 968 P.2d 871 (1998). A plaintiff may bring two tort trespass actions against an alleged intruder onto property, intentional trespass or negligent trespass. To show negligence, the plaintiff must prove "duty, breach, causation, and damages." Gaines, 66 Wash.App. at 720, 834 P.2d 631. Grundy did not plead negligence in her amended complaint. Although the trial court seems to have relied on negligence in finding liability,[7] Grundy neither pled nor argued negligent trespass, and we, therefore, address only Grundy's actual claim of intentional trespass.

A. Standard of Review
¶ 15 Unchallenged findings of fact are verities on appeal. Halvorsen v. Ferguson, 46 Wash.App. 708, 722, 735 P.2d 675 (1986). "Where the relevant facts are undisputed and the parties dispute only the legal effect of those facts, the standard of review is ... de novo." Happy Bunch, LLC v. Grandview North, LLC, 142 Wash.App. 81, 88, 173 P.3d 959 (2007), review denied, 164 Wash.2d 1009, 195 P.3d 87 (2008). We review conclusions of law mislabeled as findings of fact de novo as conclusions of law. Willener, 107 Wash.2d at 394, 730 P.2d 45.

B. Intentional Trespass
¶ 16 Intentional trespass occurs only where there is "(1) an invasion of property affecting an interest in exclusive possession, (2) an intentional act, (3) reasonable foreseeability that the act would disturb the plaintiff's possessory interest, and (4) actual and substantial damages."[8]Wallace v. Lewis *625 County, 134 Wash.App. 1, 15, 137 P.3d 101 (2006); see also Bradley, 104 Wash.2d at 690-92, 709 P.2d 782; 16 David K. DeWolf & Keller W. Allen, Washington Practice: Tort Law and Practice § 13.31, at 145 (Supp. 3d ed.2008).
¶ 17 For purposes of this opinion, we assume that Grundy suffered an invasion affecting her interest in exclusive possession when water and debris entered her property and only address the remaining three elements. Because the element of actual and substantial damages is determinative, we address it first.

1. Actual and Substantial Damage
¶ 18 To commit intentional trespass, a person must cause "actual and substantial damage[]" to the property of another. Wallace, 134 Wash.App. at 15, 137 P.3d 101. Here, the trial court found that Grundy "has only experienced minor water intrusion as a result of the raising of the [Bracks'] seawall." Moreover, no flooding had occurred as a result of the raised bulk head but "sea spray and splash causes occasional debris and yellowed and dead grass on a portion of [Grundy's] property." CP at 883. And "raising of the bulkhead ... has not caused a significant injury or appreciable harm to [Grundy] or [Grundy's] property." CP at 885. The trial court also found that the "raising of [the Bracks'] bulkhead did not proximately cause a significant compensable injury to [Grundy], other than contributing to the deposit of debris on a portion of [her] property and areas of yellow and dead grass." CP at 886. These findings are unchallenged on appeal and are, therefore, verities. Halvorsen, 46 Wash.App. at 722, 735 P.2d 675.
¶ 19 Grundy's failure to prove substantial injury is fatal to her claim.

2. Intentional Act and Reasonable Foreseeability
¶ 20 Intentional trespass requires an intentional act. But the defendant need not have intended the trespass; he need only have been substantially certain that the trespass would result from his intentional actions. Brutsche v. City of Kent, 164 Wash.2d 664, 674 n. 7, 193 P.3d 110 (2008).
¶ 21 The Bracks intentionally raised their bulkhead. But the issue for intentional trespass is whether they had "'knowledge that [raising their bulkhead would] to a substantial certainty result in the entry of the [sea water and debris]'" onto Grundy's property. Bradley, 104 Wash.2d at 682, 709 P.2d 782 (quoting 1 Restatement (Second) of Torts § 158 cmt. i at 279 (1965)). Grundy's evidence on the elements of intentional acts and foreseeability also fails.
¶ 22 The trial court struck the words "intentional" and "wrongful" from its findings of fact and conclusions of law. CP at 887, 891-92. Although the trial court found that the Bracks "raised their bulkhead ... without considering the consequences to Grundy," it made no specific finding on whether the Bracks knew or should have known that raising their bulkhead would cause water to enter Grundy's property. CP at 887.
¶ 23 Grundy argues that the Bracks should have known the raised bulkhead would cause a trespass because the same type of trespass occurred following the Bracks' erection of sandbags. But whether water or debris entered Grundy's property following the sandbagging and, if so, whether the Bracks had reason to know this was disputed at trial.
*626 ¶ 24 Grundy testified that after the Bracks sandbagged their bulkhead, "the following winter when we got the high tides and stormy weather, water came onto my property for the first time and left a lot of debris." Report of Proceedings (RP) (June 11, 2007) at 16. Kathy Sorger, a resident of Johnson Point at the time the Bracks' bulkhead was constructed, testified that she "complained of... the Brack activities" but she did not testify about when she made this complaint and to whom she complained. RP (June 11, 2007) at 103. Grundy presented no other evidence that the Bracks had reason to know that the raised bulkhead would cause water or debris to enter her property.
¶ 25 Keith Gibson, a Brack relative and the bulkhead general contractor who resided on the Brack property during its renovation, testified at trial that he never "observe[d] Ms. Grundy's property flood in any way" while the sandbags were erected. RP (June 12, 2007) at 280. Thus, the evidence relating to the Bracks' knowledge about the effect of raising the bulkhead was disputed.
¶ 26 We defer to the finder of fact on issues of credibility and weight of the evidence. Forbes v. Am. Bldg. Maint. Co. West, 148 Wash.App. 273, 287, 198 P.3d 1042 (2009). Based on the evidence at trial, the trial court did not err in concluding that the Bracks did not intentionally or wrongfully cause water or debris to enter Grundy's property. Because we hold that the Bracks did not intentionally enter Grundy's property and did not cause actual and substantial injury, we hold that the Bracks did not commit intentional trespass.
¶ 27 A property owner is not liable for sea water entering the property of another unless he intentionally or wrongfully directs the water onto his neighbor's property. Here, "high wind and waves amplified by the increase in height of [the Bracks'] bulkhead" caused some sea water and debris to enter Grundy's property. CP at 883. That the Bracks' seawall caused the water to enter Grundy's property does not, without more, create liability for trespass. To hold otherwise could cause excessive litigation by property owners along Washington's many miles of coastlineon the Pacific Ocean as well as Puget Sound and the Straits of Juan de Fuca. We do not interpret the Supreme Court's opinion in Grundy v. Thurston County to intend such results.

III. Attorney Fees
¶ 28 The Bracks also argue that the trial court improperly awarded attorney fees to Grundy because, under RCW 4.24.630, attorney fees are appropriate in trespass actions when the trespass was wrongful.[9] Grundy argues that the Bracks invited this error, since the Bracks "induc[ed]" the trial court to omit the intent language from the written findings, contrary to the trial court's oral findings. Br. of Resp't at 9-10. She argues that "[t]he court did not intend to enter judgment in Grundy's favor while, at the same time, eliminating the bas[i]s for its awards of damages and attorney fees." Br. of Resp't at 11.
¶ 29 The transcript of the trial court's oral ruling is not part of the record on appeal. Even if the oral ruling were available, written findings control where they conflict with an oral decision. State v. Bryant, 78 Wash.App. 805, 812-13, 901 P.2d 1046 (1995). Furthermore, Grundy points to no evidence in the record showing that the findings of fact and conclusions of law were in conflict with the trial court's ruling. There is no evidence in the record that the Bracks intended to commit trespass or wrongfully raised their bulkhead. Thus, the trial court did not err.
¶ 30 Because we reverse the trial court's conclusion that the Bracks committed trespass, we reverse its award of $16,000 in damages as well as the $22,500 in attorney fees to Grundy and remand for further proceedings consistent with this opinion.
We concur: BRIDGEWATER and PENOYAR, JJ.
NOTES
[1] The appellants include the Brack Family Trust, Calvin Brack, and Joyce M. Brack. We refer to the appellants collectively as the Bracks.
[2] Grundy also sued Thurston County for issuing a permit to the Bracks against the advice of the Department of Ecology and contrary to the County's own regulations. See Grundy, 155 Wash.2d at 4, 117 P.3d 1089. Grundy dismissed her suit against Thurston County on remand.
[3] "[T]he common enemy doctrine allows landowners to dispose of unwanted surface water in any way they see fit, without liability for resulting damage to one's neighbor." Currens v. Sleek, 138 Wash.2d 858, 861, 983 P.2d 626 (1999). Washington has adopted several exceptions to the common enemy doctrine, including restrictions on landowners' ability to "inhibit the flow of a watercourse or natural drainway" or "collect[] water and channel[] it onto their neighbors' land." Currens, 138 Wash.2d at 862, 983 P.2d 626. There is also a "due care" exception, requiring landowners to "exercise their rights in good faith and with such care as to avoid unnecessary damage to the property of adjacent owners." Currens, 138 Wash.2d at 863-65, 983 P.2d 626.
[4] The trial court stated that Grundy "testified at trial that she was not seeking monetary damages from [the Bracks] attributable to the raising of [their] bulkhead." CP at 885. In closing arguments, Grundy's counsel conceded that the trespass "cannot be remedied by an award of damages because it is not causing more than de minimus [sic] physical damage" and continued, "We are asking that the wall be brought down to the status quo ante." Report of Proceedings (RP) (June 13, 2007) at 153, 154.
[5] The trial court also found that the Bracks caused illegal diversion, stating that Grundy's "illegal diversion claim is identical to and arises out of the same set of operative facts as the ... claim of water trespass." CP at 887. The trial court did not further address the elements of illegal diversion. Neither party addresses illegal diversion on appeal nor does the record reflect that they discussed its elements at the trial court. Our review of Washington law does not support the trial court's conclusion that the elements of illegal diversion are identical to those of water trespass. Therefore, we hold that the trial court erred in finding that the Bracks caused illegal diversion.
[6] Washington is among only 12 states that still apply the common enemy doctrine. Many states have abandoned either the common enemy doctrine or the civil law rule, under which landowners are liable if they "interfer[] with the natural flow" of surface water, in favor of the "Reasonable Use" standard. Wendy B. Davis, Reasonable Use Has Become the Common Enemy: An Overview of the Standards Applied to Diffused Surface Water and the Resulting Depletion of Aquifers, 9 Alb. L. Envtl. Outlook J. 1, at 9 (2004). We note that many other states have acknowledged the doctrine's applicability to sea water. In Arkansas, where the common enemy doctrine still applies, the Arkansas Supreme Court has stated, "The common enemy doctrine provides that waters of the sea or surface waters are a common enemy." Scroggin v. City of Grubbs, 318 Ark. 648, 656 n. 6, 887 S.W.2d 283 (1994) (emphasis added). Prior to its full adoption of the reasonable use standard in 1994, Locklin v. City of Lafayette, 7 Cal.4th 327, 357, 359, 867 P.2d 724, 27 Cal.Rptr.2d 613 (1994), California appears to have applied the common enemy doctrine (1) in urban areas, see Keys v. Romley, 64 Cal.2d 396, 406-07, 412 P.2d 529, 50 Cal.Rptr. 273 (1966); (2) "to the state and its agencies," Beckley v. Reclamation Board., 205 Cal.App.2d 734, 745, 23 Cal.Rptr. 428 (1962); and (3) in cases of flooding, Weaver, 206 Cal. App.3d. at 1353-54, 254 Cal.Rptr. 425. The California appellate courts have consistently noted the common enemy doctrine's applicability to sea water:

One whose land is being washed away by a stream faces a situation much like that of an owner threatened by surface or flood waters.... All three situations are closely analogous to that of a coastal owner who can only protect himself against marine erosion by erecting groins, which may in turn divert the sea's erosive force to neighboring lands. This is the precise situation which, in England, gave rise to the "common enemy" doctrine. It was the analogy between this coastal situation and the riparian one which led the California Supreme Court to adopt the "common enemy" doctrine as the law of this state where watercourse flooding is concerned.
Weaver, 206 Cal.App.3d at 1356, 254 Cal.Rptr. 425. See also Katenkamp v. Union Realty Co., 36 Cal.App.2d 602, 609, 98 P.2d 239 (1940); Weinberg Co. v. Bixby, 185 Cal. 87, 95, 196 P. 25 (1921); Lamb, 73 Cal. at 130-31, 14 P. 625. Prior to abandoning the common enemy doctrine in favor of the reasonable use standard, the Florida Supreme Court stated, "The waters of the sea are usually considered a common enemy." Paty v. Town of Palm Beach, 158 Fla. 575, 29 So.2d 363, 363 (1947). The North Carolina Supreme Court has stated, "No cases have come to our attention involving overflow waters from an ocean, sea or gulf, though we have made an exhaustive search. However, we discern no reason why the principles which apply to surface waters from inland streams should not with equal force apply to overflow waters from the ocean." Midgett v. N.C. State Highway Comm'n, 260 N.C. 241, 246, 132 S.E.2d 599 (1963), overruled on other grounds by Lea Co. v. N.C. Board. of Transp., 308 N.C. 603, 616, 304 S.E.2d 164 (1983). Further, the Texas Supreme Court has noted that the first case to apply the common enemy doctrine to surface water was erroneously decided; instead, the common enemy doctrine should only have been applied to sea water. Miller v. Letzerich, 121 Tex. 248, 258, 49 S.W.2d 404 (1932) (citing Durkes v. Town of Union, 38 N.J.L. (9 Vroom) 21 (Sup.Ct.1875)).
[7] The trial court erroneously conflated intentional trespass with negligence in finding of fact 42 where the trial court found that the Bracks violated a duty of care to not intrude on Grundy's property. This conclusion of law is mislabeled as finding of fact 42. We treat conclusions of law mislabeled as findings of fact as conclusions of law and review them de novo. Willener v. Sweeting, 107 Wash.2d 388, 394, 730 P.2d 45 (1986). Duty is not an element of intentional trespass. See Wallace v. Lewis County, 134 Wash.App. 1, 15, 137 P.3d 101 (2006).
[8] Wallace cites to Bradley, which case seems to imply that this four part test only applies if the intentional trespass was indirect. See Bradley, 104 Wash.2d at 691-93, 709 P.2d 782. But in Bradley, our Supreme Court also held that "[t]he distinction between direct and indirect invasions to land was abandoned" in 1965. 104 Wash.2d at 689, 709 P.2d 782. It is, therefore, unclear whether the Wallace four part test applies to all intentional trespass or only to indirect intentional trespass.

Even if the four part test applies only to indirect trespass, we hold that any trespass in this case was indirect. Indirect trespass occurs where the trespass would have previously only been actionable as a nuisance. Bradley, 104 Wash.2d at 691, 709 P.2d 782. The Bradley court gives as examples of indirect invasion situations where "`asphalt [is] piled in such a way as to run onto plaintiff's property, or [where] the pollution emitting from a defendant's smoke stack'" enters the plaintiff's property. 104 Wash.2d at 691, 709 P.2d 782 (quoting Borland v. Sanders Lead Co., 369 So.2d 523, 529 (Ala. 1979)).
¶ Here, the Bracks did not directly enter Grundy's property nor did they directly cause water to enter Grundy's property. Therefore, any water splashing on Grundy's property from storm or sea wave action against the Bracks' raised bulkhead constituted an indirect invasion and we would apply the Wallace four part test.
[9] "[A] person acts `wrongfully' if the person intentionally and unreasonably commits the act or acts while knowing, or having reason to know, that he or she lacks authorization to so act." RCW 4.24.630(1).