**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

CLAYTON ERNEST LONGACRE,

                Appellant,

      v.

LISA L. GANOWSKI,
JEFFREY T. CLOSSON,
JOHN DOE 1 and JOHN DOE 2,

                Respondents.

No. 83345-6-I

DIVISION ONE

UNPUBLISHED OPINION

SMITH, J. — Clayton Ernest Longacre appeals the trial court's summary dismissal of his trespass and harassment claims against Lisa L. Ganowski, Jeffrey T. Closson, and John Does 1 and 2. Longacre contends he has demonstrated that there are genuine issues of material fact precluding dismissal of his claims. He also contends that the trial court erred by denying his motion to amend his complaint and denying his motion to compel discovery and suspend all motions. Finding no error, we affirm.

FACTS

Elizabeth Kelsey owned and lived in a home located on Madrona Point Drive in Bremerton. Kelsey's fiancé Clayton Longacre often resided there with her. In 2016, Lisa Ganowski purchased and moved into the home directly to the north. Ganowski's significant other Jeffrey Closson lived there with her. A fence separated the two properties.

Citations and pin cites are based on the Westlaw online version of the cited material.

The neighbors had a contentious relationship from the start. In May 2018, Ganowski began reporting multiple disturbances involving Kelsey's dogs to the Bremerton Police Department and Kitsap Animal Control. Longacre's behavior towards Ganowski on the night of her first report caused her to call 911 out of fear for her safety. On June 13, 2019, a dog belonging to Longacre wandered onto the Ganowski property, leading Closson to collect and return the dog while Ganowski recorded the exchange on her cell phone. Kelsey responded by shouting profanities and repeatedly threatening to shoot Closson if he ever came on her property again. The following day, Ganowski and Closson obtained temporary antiharassment orders against Kelsey in municipal court.

On July 23, 2019, Longacre filed a pro se lawsuit against Ganowski, Closson, and John Does 1 and 2,[1] alleging causes of action for trespass and harassment and seeking damages under both theories. The complaint alleged that the defendants (1) caused raw sewage from their property to back up into the first floor of the Kelsey residence, (2) installed a gate that damaged a wooden fence on the Kelsey property, (3) made false reports to parking enforcement in an attempt to get plaintiff's vehicles towed, (4) shoveled snow onto the Kelsey property, (5) coaxed the plaintiff's dogs onto their property in order to make false reports to animal control, (6) behaved in a threatening manner towards the plaintiffs, and (7) colluded with other neighbors to harass and make false claims against the plaintiffs. On September 13, 2019, Longacre filed an amended complaint adding Kelsey as a plaintiff and asserting three additional causes of

---

[1] The complaint alleged that John Doe 1 is Ganowski's son and that John Doe 2 is his live-in companion. John Doe 2 is not a respondent in this appeal.

action: abuse of process, malicious prosecution, and intentional infliction of emotional distress.

While Longacre's original complaint was pending, the municipal court transferred the antiharassment orders to the jurisdiction of the superior court. On September 16-17, 2019, the superior court held a hearing on the antiharassment petitions and also addressed motions filed by both parties in the civil lawsuit. Ganowski and Closson argued that Longacre's amended complaint should be stricken because, among other reasons, they had already moved to dismiss the lawsuit under CR 12(b)(6) and Longacre did not file a motion to amend his complaint.[2] The court denied Ganowski's and Closson's motions to dismiss and struck Longacre's amended complaint, stating, "if Mr. Longacre wants to file an amended complaint at this point, he can file a motion requesting we to do that." Regarding the antiharassment petitions, the superior court ruled that Kelsey's threatening and aggressive behavior, as demonstrated on the cell phone recording, as well as the dog's repeated invasions of the Ganowski property, constituted harassment. Accordingly, the court entered protection orders effective for one year against Kelsey on behalf of Ganowski and Closson.

On June 19, 2020, Ganowski served a motion for summary judgment on Longacre via email.[3] Ganowski argued that Longacre's retaliatory complaint consisted entirely of baseless claims lacking factual support or any showing of damage. Ganowski further argued that there is no civil cause of action for

---

[2] See CR 15(a) (once a responsive pleading is served, party may amend its complaint only by leave of court or written consent of adverse party).
[3] The summary judgment motion was filed the following day.

harassment, and to the extent that intentional infliction of emotional distress was his intended claim, Longacre failed to demonstrate that the defendants' alleged behaviors met that standard. CP 83-84. In doing so, Ganowski relied on her own declaration, transcripts of the September 16-17, 2021 hearing, the protection orders, and the deposition of Longacre. Closson moved for summary judgment shortly thereafter on the same basis.

On June 18, 2020 – the same day Ganowski served the summary judgment motion – Longacre filed a motion for leave to amend his complaint pursuant to CR 15(a). The proposed amended complaint added Kelsey as a plaintiff, included several new allegations of fact, and asserted five new causes of action: abuse of process, malicious prosecution, intentional infliction of emotional distress, theft and possession of stolen property, and nuisance, encroachment, and intentional interference with quiet enjoyment of property.

On July 23, 2020, Longacre filed a response in opposition to summary judgment. Longacre asserted that the case arose when another neighbor recruited the defendants to join his ongoing harassment of Longacre and Kelsey. In asserting that genuine issues of material fact precluded summary judgment, Longacre relied on his own declaration, Kelsey's declaration, the declaration of Randall Hills (an individual who stated that he witnessed an incident of harassment), transcripts of 911 calls placed by two neighbors, and a fire marshal's report. On July 27, 2020, Longacre filed a "motion to compel discovery and to suspend all motions and discovery by defendants until discovery requested is fully answered and provided." Longacre argued that the defendants

unreasonably resisted discovery by refusing to answer interrogatories, provide requests for production, or attend depositions, in violation of CR 37 and CR 26.

On October 13, 2020, the superior court issued a memorandum opinion granting Ganowski's and Closson's motions for summary judgment and denying Longacre's motion for leave to amend and motion to compel discovery. The court determined that there was no genuine issue of material fact as to the trespass claim because Longacre had failed to show damages and failed to present evidence beyond mere speculation. The court further ruled that there is no tort claim in Washington for harassment and that the defendants' alleged conduct did not rise to the level required to prove the tort of intentional infliction of emotional distress. In denying the motion for leave to amend his complaint, the court found that the defendants would be prejudiced by Longacre's "late request to amend his complaint and the futility thereof." The court further found that Longacre's motion to compel discovery was "merely an attempt to delay or avoid Defendant's motion for summary judgment," that Longacre had failed to specify how additional discovery would present any evidence that would create a question of material fact, and that the defendants had reasonably attempted to accommodate Longacre's request to take their depositions. Longacre appeals.

ANALYSIS

Summary Judgment

Longacre first argues that the trial court erred when it granted the respondents' motions for summary judgment on his trespass and harassment claims. We disagree.

*Standard of Review*

We review an order on summary judgment de novo, viewing all evidence and reasonable inferences in the light most favorable to the nonmoving party. Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c).

When a defendant brings a motion for summary judgment, "the moving party bears the initial burden of showing the absence of a material fact." Young v. Key Pharm. 112 Wn.2d 216, 225, 770 P.2d 182 (1989). Once this initial showing is made, the burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine issue for trial. Kendall v. Douglas, Grant, Lincoln and Okanogan Public Hosp. Dist. No. 6, 118 Wn.2d 1, 8-9, 820 P.2d 497 (1991). The nonmoving party may not rely on speculation, argumentative assertions, or unsupported affidavits. Dombrovsky v. Farmers Ins. of Wash., 84 Wn. App. 245, 253, 928 P.2d 1127 (1996). A genuine issue of material fact exists if "reasonable minds could differ on the facts controlling the outcome of the litigation." Ranger Ins. v. Pierce Cty., 164 Wn.2d 545, 552, 192 P.3d 886 (2008). When a reasonable person could reach but one conclusion from all of the evidence, summary judgment will be affirmed. Peterson v. Kitsap Cmty. Fed. Credit Union, 171 Wn. App. 404, 416, 287 P.3d 27 (2012).

*Trespass*

"Trespass occurs when a person intentionally or negligently intrudes onto the property of another." Jackass Mt. Ranch, Inc. v. South Columbia Basin Irr. Dist., 175 Wn. App. 374, 401, 305 P.3d 1108 (2013). Longacre alleges both forms of trespass.

A. Negligent Trespass

To show negligent trespass, a plaintiff must prove duty, breach, causation, and proximate cause. Pruitt v. Douglas Cty., 116 Wn. App. 547, 554, 66 P.3d 1111 (2003). Longacre asserts that Ganowski committed negligent trespass because someone improperly used a snake to unclog a toilet in her home, thereby flooding the Kelsey residence with sewage and causing significant damage. But Longacre provided nothing but his own self-serving testimony in support of his claim that Ganowski or her agent caused the event. He asserts that no expert testimony is needed to establish causation because he has experience installing plumbing in buildings he has built. However, at his deposition, Longacre acknowledged that he did not have first-hand information as to who caused the sewage flooding.

Moreover, Longacre inexplicably failed to provide any evidence that might document the nature and extent of the damages -- or even whether the event happened at all. Longacre claims he wrote a letter to Ganowski describing the damage and her role in causing it, but he failed to provide a copy. Nor did he provide photographs or receipts for the costs of repair. Longacre's speculative,

unsupported assertions are insufficient to overcome summary judgment on his negligent trespass claim.

B. Intentional Trespass

Longacre also asserts that he set forth evidence establishing that the defendants committed multiple acts of intentional trespass. To show intentional trespass, a plaintiff must prove " '(1) an invasion of property affecting an interest in exclusive possession, (2) an intentional act, (3) reasonable foreseeability that the act would disturb the plaintiff's possessory interest, and (4) actual and substantial damages.' " Grundy v. Brack Family Trust, 151 Wn. App. 557, 568, 213 P.3d 619 (2009) (quoting Wallace v. Lewis Cty., 134 Wn. App. 1, 15, 137 P.3d 101 (2006)).

Longacre claims that John Does 1 and 2 intentionally trespassed onto Kelsey's property by "mess[ing] around with" his boat, stealing rocks from the outdoor fireplace, shoveling snow onto the lawn, and throwing trash into the yard. He contends that Ganowski is responsible for these acts because the John Does resided in her home. However, in his deposition, Longacre admitted that he did not see any of these events take place and that he had no evidence that Ganowski directed or was aware of these alleged acts. Longacre also asserts that Ganowski committed intentional trespass by entering Kelsey's yard to make sure the dogs had water, entering Kelsey's yard to release one of their dogs from its kennel so it could be seized by animal control, flying a drone over the yard to spy and harass, and poisoning the roses and grass. In particular, Longacre

points to an animal control report stating that an unidentified reporting party "went to put the dogs back in the subject's yard and saw no water."

Ganowski and Closson, citing Grundy, argue that Longacre's failure to allege or provide evidence of actual and substantial damages arising from these alleged acts is fatal to his intentional trespass claim. We agree. In Grundy, the plaintiff brought an intentional trespass claim against neighbors who raised the height of their bulkheads, thus increasing the intensity and amount of seawater splashing onto the plaintiff's property during winter months. 151 Wn. App. at 560-61. Noting that the raised bulkhead "did not proximately cause a significant compensable injury to [Grundy], other than contributing to the deposit of debris on a portion of [her] property and areas of yellow and dead grass," the Grundy court held that the plaintiff's "failure to prove substantial injury is fatal to her claim." 151 Wn. App. at 568. Here, Longacre's claimed property damages were minimal and undocumented or entirely nonexistent. Longacre attempts to get around this problem by asserting that the damages are "emotional" and "directly related to harassment," thus making them "more than an annoyance." But the tort of intentional trespass requires a showing of "actual and substantial damage to the property of another." Grundy, 151 Wn. App. at 566. Even assuming that Longacre could establish that the alleged intentional trespasses occurred, the dearth of evidence regarding damages warranted summary judgment on this claim.

*Harassment*

Longacre first argues that the trial court erred in concluding that RCW 10.14.140, the chapter on civil antiharassment orders, does not establish a civil remedy in tort for harassment. "Statutory interpretation is a question of law reviewed de novo." Jametsky v. Olsen, 179 Wn.2d 756, 761, 317 P.3d 1003 (2014). The goal is to determine and give effect to the legislature's intent. Birgen v. Dep't of Labor and Indus., 186 Wn. App. 851, 857, 347 P.3d 503 (2015). If a statute is unambiguous, we apply the statute's plain meaning as an expression of legislative intent. Jametsky, 179 Wn.2d at 762.

Longacre points to language in RCW 10.14.140 stating that "[n]othing in this chapter shall preclude a petitioner's right to utilize other existing civil remedies." He contends that this language expresses the legislature's clear intent to allow other civil remedies for harassment to exist. But RCW 10.14.010 plainly states that "[t]his chapter is intended to provide victims with a speedy and inexpensive method of obtaining antiharassment protection orders." Chapter 10.14 RCW makes no mention of a civil cause of action in tort.

Longacre also relies on Bishop v. City of Spokane, 142 Wn. App. 165, 173 P.3d 318 (2007), but that case is unhelpful to him. In Bishop, the plaintiff sued the City of Spokane, alleging that an officer's conduct violated her civil rights and constituted a series of other offenses, including "harassment." Bishop, 142 Wn. App. at 169. The trial court concluded that the plaintiff had failed to state a claim and that she did not offer sufficient evidence to support any of her claims. Id. The court allowed the plaintiff to amend her complaint to include a claim for

wrongful arrest, then dismissed it on summary judgment. Bishop, 142 Wn. App. At 169. The appellate court reversed, holding that there was a genuine issue of material fact as to whether the officer had probable cause to believe that the plaintiff knowingly or willfully acted to obstruct the officer. Bishop, 142 Wn. App. at 173. Bishop provides no support for Longacre's attempt to bring a civil tort claim for harassment. The trial court did not err in determining that this type of claim does not exist in Washington.

Longacre also argues that the court erred in concluding that the defendants' alleged conduct did not rise to the level required to prove the tort of intentional infliction of emotional distress. We disagree. To prevail on a claim of intentional infliction of emotional distress, also known as the tort of outrage, the plaintiff must show " '(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of emotional distress.' " Lyons v. U.S. Bank Nat'l Ass'n, 181 Wn.2d 775, 792, 336 P.3d 1142 (2014) (quoting Kloepfel v. Bokor, 149 Wn.2d 192, 195, 66 P.3d 630 (2003)). Although the plaintiff need not prove bodily harm or objective symptomology, the emotional distress must be severe, not transient or trivial. Kloepfel, 149 Wn.2d at 198. " 'To constitute outrage, the conduct at issue 'must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " Spicer v. Patnode, 9 Wn. App. 2d 283, 292, 443 P.3d 801 (2019) (internal quotation marks omitted) (quoting Reyes v. Yakima Health Dist., 191 Wn.2d 79, 91, 419 P.3d 819 (2018)). The tort " 'does

not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.' " Strong v. Terrell, 147 Wn. App. 376, 386, 195 P.3d 977 (2008) (internal quotation marks omitted)(quoting Kloepfel, 1 Wn2d. at 196).

The burden of establishing this tort is quite stringent. In Kloepfel, the plaintiff established outrage where the defendant ignored restraining orders that she had secured against him, stalked her home and those of the men she knew, called her home 640 times and her work 100 times, and threatened to kill both the plaintiff and the man she was dating. 149 Wn.2d at 194-95. Conversely, in Strong, a supervisor verbally abused an employee daily over the course of two years by "screaming at her and criticizing her work," making repeated "blonde jokes," and disparaging her home and her family. 147 Wn. App. at 381. The court held that this conduct did not exceed all possible bounds of decency as measured against an objective standard of reasonableness. Strong, 147 Wn. App. at 386.

Longacre argues that the defendants' behaviors support a claim of outrage because he and Kelsey suffered severe emotional distress, sleeplessness, depression, anxiety, and irritability, thus forcing them to flee their home. We disagree. Even taking Longacre's claims at face value, the behaviors he complains about fall under the rubric of "annoyances and petty oppressions" rather than being "utterly intolerable in a civilized community." The trial court did not err in dismissing Longacre's claims on summary judgment.

<u>Leave to Amend Pleadings</u>

Longacre argues that the trial court erred by denying him leave to amend his complaint. We will reverse a trial court's ruling on a request to amend only if the trial court abused its discretion. <u>Nepstad v. Beasley</u>, 77 Wn. App. 459, 468, 892 P.2d 110 (1995). "A trial court abuses its discretion when its decision is manifestly unreasonable, based on untenable grounds, or made for untenable reasons." <u>Protect the Peninsula's Future v. City of Port Angeles</u>, 175 Wn. App. 201, 214, 304 P.3d 914 (2013).

"After an answer is served, CR 15(a) permits a plaintiff to amend a complaint only by leave of court, which shall be freely given when justice so requires." <u>Rodriguez v. Loudeye Corp.</u>, 144 Wn. App. 709, 729, 189 P.3d 168 (2008). The purpose of the rule is to "facilitate proper decisions on the merits, to provide parties with adequate notice of the basis for claims and defenses asserted against them, and to allow amendment of the pleadings except where amendment would result in prejudice to the opposing party." <u>Wilson v. Horsley</u>, 137 Wn.2d 500, 505, 974 P.2d 316 (1999). "The touchstone for the denial of a motion to amend is the prejudice such an amendment would cause to the nonmoving party." <u>Karlberg v. Otten</u>, 167 Wn. App. 522, 529, 280 P.3d 1123 (2012). The court may consider whether the new claim is untimely or futile. <u>Ino Ino, Inc. v. City of Bellevue</u>, 132 Wn.2d 103, 142, 937 P.2d 154 (1997).

We conclude that the trial court did not abuse its discretion in concluding that the defendants would be prejudiced by Longacre's "late request to amend his complaint." Although the trial court expressly invited Longacre to move to

amend his complaint in September 2019, he waited nine months to do so.

Notably, in its memorandum opinion, the court found that Longacre

"acknowledged that he filed this motion knowing that Defendants were going to

file or had almost simultaneously filed their motions for summary judgment."

Longacre argues that the defendants suffered no prejudice because trial was a

long way off, the case had only been going on for a year, and they were aware

from early on that he intended to amend his complaint and bring Kelsey in as a

co-plaintiff.  He contends that he could not file sooner because the courts were

shut down due to COVID-19[4] and because he needed to discover the names of

the John Doe defendants.  But the introduction of a new plaintiff and multiple new

claims after the defendants completed discovery and moved for summary

judgment would have had a prejudicial effect on their defense.  See Wallace, 134

Wn. App. at 26 (motion for leave to amend complaint to add significant new

claims, filed a year and a half after the original complaint and a month before the

scheduled summary judgment hearing, constituted prejudicial delay).

Nor did the court abuse its discretion in concluding that the proffered

amendment would be futile.  As a pro se plaintiff, Longacre had no authority to

represent Kelsey in the litigation.  The pro se exception is very limited and

applies " 'only if the layperson is acting solely on his own behalf.' "  Cottringer v.

Emp't Sec. Dep't., 162 Wn. App. 782, 787, 257 P.3d 667 (2011) (emphasis

omitted) (quoting Wash. State Bar Ass'n v. Great W. Union Fed. Sav. & Loan

---

[4] COVID-19 is the World Health Organization's official name for "coronavirus disease 2019," a severe, highly contagious respiratory illness that quickly spread throughout the world after being discovered in December 2019.

Ass'n, 91 Wn.2d 48, 57, 586 P.2d 870 (1978)). Because Kelsey did not sign anything indicating her agreement to join the lawsuit as a pro se plaintiff, the motion to amend was futile on that basis.

We also agree that the five additional claims Longacre sought to add were futile for multiple reasons. "A lawsuit is futile where there is no evidence to support or prove existing or additional allegations and causes of action." Nakata v. Blue Bird, Inc., 146 Wn. App. 267, 279, 191 P.3d 900 (2008). As discussed above, the trial court properly analyzed and dismissed Longacre's claim for intentional infliction of emotional distress. His claims for theft and possession of stolen property and nuisance, encroachment, and intentional interference with quiet enjoyment of property are essentially interchangeable with his negligent and intentional trespass claims, which the trial court also properly dismissed as lacking factual support. And Longacre's new claims for abuse of process and malicious prosecution, both of which appear to arise from the entry of antiharassment orders against Kelsey, are factually unsupported and barred by collateral estoppel. Collateral estoppel, or issue preclusion, prevents the same parties from relitigating issues actually raised and resolved by a former verdict and judgment. State v. Williams, 132 Wn.2d 248, 253–54, 937 P.2d 1052 (1997). In the prior proceeding, the court rejected Kelsey's assertion that she and Longacre, not Ganowski and Closson, were the parties suffering from harassment. Longacre's attempt to relitigate this outcome by claiming it stemmed from abuse of process or malicious prosecution was properly rejected as futile.

<u>Motion to Compel Discovery and Suspend All Motions</u>

Longacre argues that the trial court erred by denying his motion to compel discovery and suspend all motions, ostensibly based on CR 26 and CR 37. A trial court's decision denying a motion to compel discovery is reviewed for an abuse of discretion. <u>Lindblad v. Boeing Co.</u>, 108 Wn. App. 198, 207, 31 P.3d 1 (2001).

As a preliminary matter, we observe that Longacre's motion, which was filed one week prior to the scheduled summary judgment hearing and asked the court to "stay[…] all motions to dismiss until the [d]efendants fully comply with discovery", clearly implicates a motion for a continuance. CR 56(f) provides:

> [s]hould it appear from the affidavits of a party opposing the motion that for reasons stated, the party cannot present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

A trial court may deny a motion for a continuance when: " '(1) the requesting party does not have a good reason for the delay in obtaining the evidence, (2) the requesting party does not indicate what evidence would be established by further discovery, or (3) the new evidence would not raise a genuine issue of fact.' " <u>Qwest Corp. v. City of Bellevue</u>, 161 Wn.2d 353, 369, 166 P.3d 667 (2007) (quoting <u>Butler v. Joy</u>, 116 Wn. App. 291, 299, 65 P.3d 671 (2003)). We review a trial court's ruling on a CR 56(f) motion for abuse of discretion. <u>Bavand v. OneWest Bank</u>, 196 Wn. App. 813, 822, 385 P.3d 233 (2016).

The court did not abuse its discretion in ruling that Longacre "failed to file a motion under CR 56(f), with appropriate support" and "failed to adequately

16

specify how additional discovery would present any evidence that would create a genuine issue of material fact concerning his claims." Longacre's declaration in support of his motion alleged numerous perceived deficiencies in the defendants' discovery responses, but he failed to submit an affidavit detailing what information he believed he could obtain from Ganowski or Closson that would provide factual support for his claims regarding their behavior or his damages. As the trial court aptly stated, Longacre's "motion to compel in effect is merely an attempt to delay or avoid Defendant's Motion for Summary Judgment."

In addition, the trial court did not abuse its discretion in denying Longacre's motion on the basis of his failure to comply with CR 26(i). "The primary purposes of CR 26(i) are to minimize the use of judicial resources during discovery and to encourage professional courtesy between counsel." Amy v. Kmart of Wash., 153 Wn. App. 846, 853, 223 P.3d 1247 (2009). CR 26(i) states that a trial court "will not entertain any motion or objection" regarding the discovery rules "unless counsel have conferred with respect to the motion or objection." It further requires that "[c]ounsel for the moving ... party shall arrange for a mutually convenient conference in person or by telephone." CR 26(i). Finally, CR 26(i) states, "Any motion seeking an order to compel discovery or obtain protection shall include counsel's certification that the conference requirements of this rule have been met." The record supports the court's finding that Longacre "failed to document a timely CR 26(i) conference in connection with a current motion to compel." We also agree with the trial court's conclusion that, given the COVID-19 pandemic

17

and emergency court orders designed to minimize risk, Longacre's demand for an in-person deposition was unreasonable and the defendants' requests for remote depositions were reasonable.

Affirmed.

_____
Smith, J.

WE CONCUR:

_____          _____
                                          Andrus, A.C.J.