SIXTH DIVISION

March 29, 2002

No. 1-01-2982

MARCIA MOSKOWITZ, Indiv. and ) Appeal from the

On Behalf of All Others Similarly Situated, ) Circuit Court of

) Cook County.

Plaintiff-Appellant, ) 

)

) No. 01 CH 2746

)

WASHINGTON MUTUAL BANK, FA., ) Honorable

) John K. Madden,

Defendant-Appellee. ) Judge Presiding.

JUSTICE O'BRIEN delivered the opinion of the court:

Plaintiff, Marcia Moskowitz, appeals an order of the circuit court granting defendant's, Washington Mutual Bank's, section 2-619 ( of the Illinois Code of Civil Procedure) motion to dismiss her class-action complaint on the ground that federal law preempts her state law claims.  In her complaint, plaintiff alleged that: (1) defendant's pattern and practice of charging consumers an undisclosed fee as a prerequisite to releasing their mortgages violates the Illinois Consumer Fraud and Deceptive Business Practices Act (Illinois Consumer Fraud Act) (815 ILCS 505/1 
et
 
seq
. (West 2000)); and (2) defendant's charging of the fee constitutes a breach of contract.  On appeal, plaintiff contends that the trial court erred in granting defendant's motion because the federal regulations pursuant to the Home Owners' Loan Act of 1933 (HOLA) (12 U.S.C. §1461 (2000)) do not preempt her claims.  We affirm.

In February 2000, plaintiff obtained a mortgage from defendant, a federally chartered savings association.  In November 2000, in connection with plaintiff's impending sale of the property, she 

received a "Demand/Payoff Statement" prepared by defendant detailing the total amount required to pay the loan in full.  The total amount included unpaid principal balance and interest, a prepayment fee, a payoff statement fee, and a fax fee.  The document further stated that "[t]he lien will not be released if: *** an insufficient amount is received to pay off the loan in full."  On two occasions after plaintiff's receipt of the statement, plaintiff's representative telephoned defendant asking defendant to waive the payoff statement fee.  Defendant refused to waive the fee.  Plaintiff paid the entire amount listed on the payoff statement when she closed on the sale of her property.

Plaintiff subsequently filed a class action complaint, alleging that: (1) defendant breached its contract with plaintiff and the putative class by requiring them to pay the previously undisclosed payoff statement fee before defendant released the mortgage; and (2) defendant's pattern and practice of charging the fee violated the Illinois Consumer Fraud Act.  Defendant moved to dismiss plaintiff's complaint pursuant to section 2-619 on the ground that HOLA expressly preempts state laws regulating loan-related fees.  Alternatively, defendant filed a section 2-615 motion to dismiss contending that the complaint failed to state a claim upon which relief could be granted.  The trial court granted defendant's motion to dismiss pursuant to section 2-619 without considering defendant's section 2-615 motion to dismiss.  Plaintiff filed this timely appeal.  The standard of review for a dismissal based on section 2-619 is 
de
 
novo
.  
Griffin v. Universal Casualty Co.
, 274 Ill. App. 3d 1056, 1063 (1995);  
Kedzie & 103rd Currency Exchange, Inc. v. Hodge
, 156 Ill. 2d 112, 116 (1993).

Defendant contends that the trial court properly granted its section 2-619 motion to dismiss on the ground that federal law preempts plaintiff's state claims against defendant.  Under the preemption doctrine, which arises from the supremacy clause of the United States Constitution (U.S. Court, art. VI, cl. 2), we examine whether Congress intended for federal law to preempt state law in a given case.  
Fidelity Federal Savings & Loan Ass'n v. de la Cuesta
, 458 U.S. 141, 152, 73 L. Ed. 2d 664, 674-75, 102 S. Ct. 3014, 3022 (1982).  Federal statutes and regulations can preempt state law in the following circumstances: (1) the language of the statute or regulation expressly preempts state law; (2) Congress implemented a comprehensive regulatory scheme in a given area, removing the entire field from state law;  or (3) state law as applied conflicts with federal law.  
Sprietsma v. Mercury Marine
, 197 Ill. 2d 112, 117 (2001), 
cert
. 
granted
, ___ U.S. ___, ___ L. Ed. 2d ___, 122 S. Ct. 917 (2002).  Where the statute or regulation contains language expressly preempting state law, "'the task of statutory construction must *** focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent.'"  
Sprietsma
, 197 Ill. 2d at 120-21, quoting 
CSX Transportation, Inc. v. Easterwood
, 507 U.S. 658, 664, 123 L. Ed. 2d 387, 396, 113 S. Ct. 1732, 1737 (1993). 

In section 5 (a) of HOLA, Congress authorized the Office of Thrift Supervision (OTS) to issue regulations governing federal savings associations.  12 U.S.C. §1464 (a)(1) (2000).  "Congress plainly envisioned that federal savings and loans would be governed by what the [OTS]- not any particular State- deemed to be the 'best practices'" of local thrift institutions and thus, "Congress expressly contemplated, and approved, the [OTS]'s promulgation of regulations superseding state law."  
de la Cuesta
, 458 U.S. at 161-62, 73 L. Ed. 2d at 680, 102 S. Ct. at 3026-27.

Here, defendant, as a federally chartered savings association, is subject to the OTS regulations, which provide as follows:

"Section 560.2 Applicability of law.

(a) 
Occupation of field
.  Pursuant to sections 4(a) and 5(a) of the HOLA, 12 U.S.C. 1463(a), 1464(a), 
OTS is authorized to promulgate regulations that preempt state laws affecting the operations of federal savings associations
 when deemed appropriate to facilitate the safe and sound operation of federal savings associations, to enable federal savings associations to conduct their operations in accordance with the best practices of thrift institutions in the United States, or to further other purposes of the HOLA.  To enhance safety and soundness and to enable federal savings associations to conduct their operations in accordance with best practices (by efficiently delivering low-cost credit to the public free from undue regulatory duplication and burden), 
OTS hereby occupies the entire field of lending regulation for federal savings associations
.  OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation.  Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, 
without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section
 ***.  For purposes of this section, 'state law' includes any state statute, regulation, ruling, order or judicial decision.

(b) 
Illustrative examples
. *** [T]he types of state laws preempted by paragraph (a) of this section include, without limitation, state laws purporting to impose requirements regarding:

***

(5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees;

***

(9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents ***;

***

(c) 
State laws that are not preempted
.  State laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section:

(1) Contract and commercial law[.]"  (Emphasis added.)  12 C.F.R. §560.2 (2001).

Therefore, OTS "occupies the entire field of lending regulation for federal savings associations", (12 C.F.R. §560.2(a) (2001)) and specifically preempts "state laws purporting to impose requirements regarding *** [l]oan-related fees" (12 C.F.R. §560.2(b)(5) (2001)).  Accordingly, if the payoff statement fee in the case before us is a "loan-related fee" as defined in section 560.2 of the OTS regulations, federal law preempts plaintiff's Illinois Consumer Fraud Act claim.

The OTS addressed this issue in a pair of opinion letters.  In the first opinion letter,  the OTS addressed whether federal law preempted the California unfair business practices statute and the California deceptive, false and misleading advertising statute (collectively referred to as the UCA) as it was being applied to demand a statement (or payoff statement) and facsimile fees charged by federal savings associations.  The OTS concluded that demand statement fees are loan-related fees and "to the extent that the UCA is being used to regulate the imposition of loan-related fees that are part of the Associations' lending programs, the UCA is preempted."  1999 OTS Op., No. P-99-3 (March 10, 1999).

In the second opinion letter, the OTS addressed a New York law that limited payoff statement fees.  The New York law stated that an association must provide an initial payoff statement free of charge, and must not charge more than twenty dollars for each subsequent payoff statement requested by the borrower.  An association operating in New York charged its customers a fee for faxing an initial payoff statement and asked the OTS whether federal law preempted state law in its case.  The OTS concluded that a fee charged for faxing a payoff statement is a loan-related fee, and to the extent the New York law would prohibit an association from charging such a fee, federal law preempted the state law as applied to the association.  The OTS further reasoned that "[t]he payoff statement is an integral part of the lending process as it provides the information necessary to satisfy the debt and extinguish the extension of credit."   2000 OTS Op., No. P-2000-6 (April 21, 2000).

In the case at bar, plaintiff claims that the payoff statement fee charged by defendant violates the Illinois Consumer Fraud Act.  As discussed above, the OTS has determined that the payoff statement is integral to the lending process and that payoff statement fees are loan-related fees within the meaning of section 560.2 of the OTS regulations.  Therefore, federal law preempts the Illinois Consumer Fraud Act to the extent it is used to regulate an association's imposition of payoff statement fees.  Accordingly, the trial court properly granted defendant's section2-619 motion to dismiss plaintiff's Illinois Consumer Fraud Act count.

Plaintiff next contends that the trial court erred in dismissing her breach of contract claim, as the OTS expressly allows such a claim to be brought under state contract law.  Plaintiff cites section 560.2(c) of the OTS regulations, which states that contract law is "not preempted to the extent that [it] only incidentally affect[s] the lending operations of Federal savings associations or [is] otherwise consistent with the purposes of paragraph (a) of this section."  12 C.F.R. §560.2(c)(2001).  

Plaintiff's breach of contract action is premised on defendant's failure to disclose in her mortgage that defendant intended to charge plaintiff a payoff statement fee prior to the release of her mortgage.  The effect of plaintiff's claim would be to impose, at the state level, a substantive  requirement mandating when in the loan process such fees must be disclosed.  However, as discussed, the OTS has described the payoff statement as "an 
integral
 part of the lending process" (emphasis added) (2000 OTS Op., No. P-2000-6 (April 21, 2000)) and the payoff statement fee as a "loan-related fee" (1999 OTS Op., No. P-99-3 (March 10, 1999)) within the meaning of section 560.2(b) of the OTS regulations.  By regulating defendant's imposition of payoff statement fees, the use of contract law here would more than "incidentally affect the lending operations" (12 C.F.R. §560.2(c) (2001)) of defendant and would interfere with section 560.2(a)'s purpose of allowing "federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation" (12 C.F.R. §560.2(a) (2001)).  Accordingly, the trial court did not err in determining that plaintiff's breach of contract claim was preempted.

For the foregoing reasons, we affirm the circuit court.

Affirmed.

GALLAGHER, P.J., and BUCKLEY, J., concur.