[No. 81896-7. En Banc.]
Argued November 10, 2009.     Decided June 24, 2010.

ANNE MCCURRY ET AL., *on Behalf of Themselves and Others Similarly Situated, Petitioners*, v. CHEVY CHASE BANK, FSB, *Respondent*.

*Roblin J. Williamson* (of *Williamson & Williams*), *Guy W. Beckett* (of *Berry & Beckett PLLP*), and *Mark A. Griffin* (of *Keller Rohrback LLP*), for petitioners.

*Timothy J. Filer* and *Neil A. Dial* (of *Foster Pepper PLLC*); *Jeffrey S. Miller* (of *ConocoPhillips Company*); and *Emanuel Jacobowitz*, for respondent.

*Stewart A. Estes* on behalf of Washington Defense Trial Lawyers, amicus curiae.

*James T. Sugarman* and *Shannon E. Smith* on behalf of the Office of the Attorney General, amicus curiae.

*George M. Ahrend* and *Bryan P. Harnetiaux* on behalf of Washington State Association for Justice Foundation, amicus curiae.

*Jeffrey R. White* on behalf of American Association for Justice, amicus curiae.

¶1 SANDERS, J. — We are asked to decide whether the state laws at issue here are preempted by federal regulation of federal savings associations. To reconvey title, Chevy Chase charged fax and notary fees that Anne and Chris McCurry argue were not permitted by the deed of trust. The trial court held state laws supporting the McCurrys' contract and consumer protection claims were preempted by federal regulation. The Court of Appeals affirmed. But these laws are generally applicable with only an incidental effect on lending operations, thus we reverse and remand the case to the trial court for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

¶2 Plaintiffs Anne and Chris McCurry[1] conveyed a deed of trust to defendant Chevy Chase Bank FSB. Chevy Chase issued a payoff statement setting forth the total amount due for reconveyance. This total included an itemized fax fee ($20) and a notary fee ($2). The McCurrys paid the total amount.

¶3 The McCurrys allege that the terms of the deed of trust did not permit a fax or notary fee to secure reconveyance of title and doing so breached the terms of the deed of trust, unjustly enriched Chevy Chase, and violated the Washington Consumer Protection Act (CPA), RCW 19.86.020,[2] in that Chevy Chase deceptively led the McCurrys to believe that the fees had to be paid to secure reconveyance under the terms of the deed of trust. Chevy Chase moved for dismissal for failure to state a claim on which relief could be granted, CR 12(b)(6), arguing federal regulation of federal savings associations preempted state law supporting the McCurrys' claims.

¶4 The King County Superior Court dismissed the McCurrys' claims. The Court of Appeals affirmed. *McCurry v. Chevy Chase Bank, FSB*, 144 Wn. App. 900, 193 P.3d 155 (2008).

## STANDARD OF REVIEW

¶5 This court reviews questions of law, including preemption, de novo. *McKee v. AT&T Corp.*, 164 Wn.2d 372, 387, 191 P.3d 845 (2008). Whether federal law preempts state law depends upon whether that was the intent of Congress. *See id.* Federal regulations have the same preemptive power as federal statutes. *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153, 102 S. Ct. 3014, 73 L. Ed. 2d 664 (1982).

---

[1] The McCurrys are also suing on behalf of two similarly situated classes.

[2] "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020.

## ANALYSIS

¶6 Three issues are before us: what is the standard for dismissing a claim under CR 12(b)(6), does federal regulation preempt state laws upon which the McCurrys' claims are based, and was dismissal appropriate on other grounds?

I. What is the standard for dismissing a case under CR 12(b)(6)?

¶7 Chevy Chase urges this court to reconsider the standard for dismissing a motion under CR 12(b)(6) in light of changes in the United States Supreme Court case law regarding Fed. R. Civ. P. 12(b)(6). Under CR 12(b)(6) a plaintiff states a claim upon which relief can be granted if it is *possible* that facts could be established to support the allegations in the complaint. *See Halvorson v. Dahl*, 89 Wn.2d 673, 674, 574 P.2d 1190 (1978) ("On a [CR] 12(b)(6) motion, a challenge to the legal sufficiency of the plaintiff's allegations must be denied unless no state of facts which plaintiff could prove, consistent with the complaint, would entitle the plaintiff to relief on the claim."); *see also Christensen v. Swedish Hosp.*, 59 Wn.2d 545, 548, 368 P.2d 897 (1962) (citing *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).

¶8 However the United States Supreme Court has recently revised its dismissal standard under Fed. R. Civ. P. 12(b)(6), permitting dismissal unless the claim is *plausibly* based upon the factual allegations in the complaint—a more difficult standard to satisfy. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007))). Chevy Chase encourages this court to similarly construe CR 12(b)(6). We decline.

¶9 A dismissal under CR 12(b)(6) is for "failure to state a claim upon which relief can be granted." *See* FED. R. CIV. P. 12(b)(6); CR 12(b)(6). This weeds out complaints where, even if what the plaintiff alleges is true, the law does not provide a remedy. *See Twombly*, 550 U.S. at 580-83 (Stevens, J., dissenting) (citing cases that originally shaped the CR 12(b)(6) standard). The new Fed. R. Civ. P. 12(b)(6) standard effectively reads "plausible" into the rule, as follows: "failure to state a [plausible] claim upon which relief can be granted." This adds a determination of the likelihood of success on the merits, so that a trial judge can dismiss a claim, even where the law does provide a remedy for the conduct alleged by the plaintiff, if that judge does not believe it is plausible the claim will ultimately succeed.[3] *See Twombly*, 550 U.S. at 570; *Iqbal*, 129 S. Ct. at 1950 ("only a complaint that states a plausible claim for relief survives a motion to dismiss" and this determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").

¶10 The Supreme Court's plausibility standard is predicated on policy determinations specific to the federal trial courts. The *Twombly* Court concluded that federal trial courts are incapable of adequately preventing discovery abuses, weak claims cannot be effectively weeded out early in the discovery process, and this makes discovery expensive and encourages defendants to settle "largely groundless" claims. *See* 550 U.S. at 557-58, 559. Neither party has shown these policy determinations hold sufficiently true in the Washington trial courts to warrant such a drastic change in court procedure.

---

[3] Whereas *Iqbal* characterizes this plausibility determination as one regarding the ultimate likelihood of success on the claim's merits, *see Iqbal*, 129 S. Ct. at 1950 (characterizing the *Twombly* holding as such), *Twombly*—at one point—characterizes the plausibility determination as one tied to discovery: "Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." 550 U.S. at 556; *see also id.* at 559-60. *But see id.* at 570 (we require only "enough facts to state a claim to relief that is plausible on its face"). This discovery gloss still represents a drastic change from the possibility standard; a trial judge could dismiss a well-pleaded complaint for failure to state a claim if the judge believed it was not plausible that discovery would ultimately uncover the necessary evidence.

¶11 Nor has either party here addressed countervailing policy considerations. For example, do current discovery expenses justify plaintiffs' loss of access to that discovery and general access to the courts, particularly in cases where evidence is almost exclusively in the possession of defendants? Could runaway discovery expenses be addressed by better means—perhaps involving more court oversight of the discovery process or a change in the discovery rules?

¶12 Currently this court lacks the type of facts and figures (specific to the Washington trial courts) that were presented to, and persuaded, the United States Supreme Court to alter its interpretation of Fed. R. Civ. P. 12(b)(6). *See Twombly*, 550 U.S. at 557-58, 559. We thus have no similar basis to fundamentally alter our interpretation of CR 12(b)(6) that has been in effect for nearly 50 years, *see Christensen*, 59 Wn.2d at 548, and decline to do so here.

¶13 Even if such facts and figures had been presented, this court would be hesitant to effectively rewrite CR 12(b)(6) based on policy considerations. The appropriate forum for revising the Washington rules is the rule-making process. *See Twombly*, 550 U.S. at 579, 595 (Stevens, J., dissenting). This process permits policy considerations to be raised, studied, and argued in the legal community and the community at large.

II.  Does federal regulation preempt state laws upon which the McCurrys' claims are based?

¶14 Chevy Chase argues that our state contract law and CPA are preempted due to federal regulation of loan-related fees. "[S]tate laws purporting to impose requirements regarding . . . [l]oan-related fees, including . . . servicing fees" are preempted. 12 C.F.R. § 560.2(b)(5). This preempts state laws that dictate what type of loan-related fees can be charged and the nature of those fees. *See, e.g., Silvas v. E\*Trade Mortgage Corp.*, 514 F.3d 1001, 1003 (9th Cir. 2008) (preempted state law alleged to preclude charging an interest rate lock-in mortgage fee); *Lopez v. World Sav. & Loan Ass'n*, 105 Cal. App. 4th 729, 739, 130 Cal. Rptr. 2d 42 (2003) (preempted state law dictating amount of

lender servicing fees); *Boursiquot v. Citibank FSB,* 323 F. Supp. 2d 350, 352-53, 356 (D. Conn. 2004) (preempted state law dictating amount and whether any fax and statement fee could be charged).

¶15 Conversely, generally applicable state laws, such as contract or commercial law, are not preempted where "they only incidentally affect the lending operations . . . or are otherwise consistent with the purposes of [preemption]." 12 C.F.R. § 560.2(c). These generally applicable laws create the groundwork within which all commercial transactions occur and are not preempted. Lending and Investment, 61 Fed. Reg. 50,951, 50,966 (Sept. 30, 1996); *Lopez,* 105 Cal. App. 4th at 741 ("[T]he state cannot dictate to the Bank how it can or cannot operate, but it can insist that, however the Bank chooses to operate, it do so free from fraud and other deceptive business practices." (citing *Fenning v. Glenfed, Inc.,* 40 Cal. App. 4th 1285, 47 Cal. Rptr. 2d 715 (1995))). Since federal regulations do not provide consumers relief from claims arising from the basic legal groundwork underlying all commercial transactions, the laws of the state provide such remedies. *See In re Ocwen Loan Servicing, LLC Mortgage Servicing Litig.,* 491 F.3d 638, 643 (7th Cir. 2007) (Office of Thrift Supervision (OTS) has "no power to adjudicate disputes between the S&Ls (savings and loans) and their customers. So it cannot provide a remedy to persons injured by wrongful acts of savings and loan associations, and furthermore HOLA [Home Owners' Loan Act, 12 U.S.C. § 1461,] creates no private right to sue to enforce the provisions of the statute or the OTS's regulations." (citation omitted)).

¶16 Here, the McCurrys allege that Chevy Chase was precluded from charging fax and notary fees *under the terms of the deed of trust*—a matter of contract law. State contract law does not purport to impose requirements on loan-related fees; state contract law instead requires parties to adhere to the terms of their contracts.[4] Forcing

---

[4] The McCurrys' unjust enrichment claim is based upon Chevy Chase's allegedly taking payment beyond that permitted in the deed of trust and thus is analyzed in conjunction with the breach of contract claim.

Chevy Chase to adhere to the terms of its contract only incidentally affects the loan-related fees, as permitted under 12 C.F.R. § 560.2(c). *See* 61 Fed. Reg. 50,951, 50,966 ("OTS wishes to make clear that the purpose of paragraph (c) is to preserve the traditional infrastructure of basic state laws that undergird commercial transactions, not to open the door to state regulation of lending by federal savings associations.").[5]

¶17 The McCurrys' CPA unfair and deceptive practice claim also survives preemption *to the extent* it is a misrepresentation stemming from the contract. The McCurrys allege Chevy Chase fraudulently represented that reconveyance of title was possible *under the terms of the deed of trust* only if the fax and notary fees were paid. A state law that precludes a party from misrepresenting the terms of its contract is one of general applicability, having only an incidental effect on federal loan operations, and is not preempted. *See Lopez*, 105 Cal. App. 4th at 741. If and to the extent the McCurrys argue the CPA regulates how or when fax or notary fees (loan-related fees) can be charged, the CPA, as applied directly to the loan-related fees, is preempted. However, this court reads the McCurrys' CPA claim as solely based upon the representations made through the contract.

¶18 The Court of Appeals here erred because it resolved the preemption issue focused solely on whether the fax and notary fees were "loan-related fees." *See McCurry*, 144 Wn. App. at 913. The fees at issue are "loan-related fees," but the dispositive issue is whether the generally applicable state law more than incidentally affects those fees. *See* 12 C.F.R. § 560.2(c); *see also* 61 Fed. Reg. 50,951, 50,966; *In re Ocwen*, 491 F.3d at 643-44 (noting there is no preemption where the state law permits an individual to enforce breached contract terms or sue based upon fraudulent

---

[5] An apparent side effect of the distinction between specific regulation and generally applicable laws is that the claims arising from specific regulation are universal challenges to the nature or permissibility of the fees, whereas claims arising from generally applicable laws are challenges specific to the individuals (as they are based upon individual contract terms or individualized conduct).

misrepresentations made by the lender);[6] *Lopez*, 105 Cal. App. 4th at 739, 745 n.9 (the court determined state law regulating the *amount* a lender could charge for servicing fees was preempted, but generally applicable state contract law was not preempted where the plaintiff alleged the terms of the deed of trust were breached by the lender charging a fax fee—although the contract claim ultimately lacked sufficient factual support to avoid summary judgment); *Boursiquot*, 323 F. Supp. 2d at 352-53, 356 (a state unfair trade practices law was preempted where the plaintiff claimed *the state law*, not contract terms, precluded imposition or at least limited the amount of a fax and statement fee); *Haehl v. Wash. Mut. Bank, FA*, 277 F. Supp. 2d 933, 941 (S.D. Ind. 2003) (a state commercial law was preempted where plaintiff alleged loan-related fees were not bona fide or reasonable under that state law).[7] The

---

[6] Chevy Chase argues *Casey v. Federal Deposit Insurance Corporation*, 583 F.3d 586 (8th Cir. 2009)—which holds that a state law that, *as applied*, imposes requirements on loan-related activities is preempted—demonstrates the McCurrys' claims should be dismissed. Resp't's Answer to *Amicus Curiae* Br. of State of Washington at 2 (citing *Casey*, 583 F.3d at 595). But Chevy Chase's over-expansive reading of *Casey* would preempt all generally applicable state law even if a law incidentally affected only lending operations, rendering 12 C.F.R. § 560.2(c) meaningless. In fact *Casey* expressly recognizes the permissibility of a generally applicable state law with only incidental effect and confirms that its analysis is consistent with that of *In re Ocwen*, which mirrors our analysis here. *See Casey*, 583 F.3d at 595 n.3 (citing *In re Ocwen*, 491 F.3d 638); *see also In re Ocwen*, 491 F.3d at 643-44, 645-48.

[7] It is unclear whether and to what extent the holding in *Moskowitz v. Washington Mutual Bank, FA*, 329 Ill. App. 3d 144, 768 N.E.2d 262, 265, 263 Ill. Dec. 502, *cert. denied*, 201 Ill. 2d 574, 786 N.E.2d 186, 271 Ill. Dec. 928 (2002) differs from these other opinions. *Moskowitz* appears to replicate the error of the Court of Appeals here, stating preemption is based on whether "the payoff statement fee in the case before us is a 'loan-related fee' as defined in section 560.2 of the OTS regulations." *Id.* However, the court then quotes 1999 OTS Op., No. P-99-3 (Mar. 10, 1999), which provides the correct requirement under 12 C.F.R. § 560.2(b)—that the law must be " 'used to regulate the imposition of loan-related fees.' " *Id.* Regardless, the outcome in *Moskowitz* appears consistent, based upon the facts readily apparent in its decision, with our decision here. The basis for the *Moskowitz* plaintiff's contract and consumer fraud claims was that state law required the bank to disclose the payoff statement fees in the contract, that requirement constituted a regulation of lending operations, and that the state laws were thus preempted. *Id.* at 266 ("The effect of plaintiff's claim would be to impose, at the state level, a substantive requirement mandating when in the loan process such fees must be disclosed."). Here, no such requirement arises because the issue is whether Chevy Chase *agreed* not to charge such fees *in*

application of general contract law and the CPA does not cause more than an incidental effect.

¶19 The dissent argues we take too narrow an interpretation of "incidental" under 12 C.F.R. § 560.2(c) and instead proposes adopting a novel and over-expansive one. Basically, the dissent hypothesizes that litigation that causes "extensive" expenses[8]—regardless of the merit of the claim—*might* cause Chevy Chase to alter its lending practices—here, by either ceasing to charge fees precluded by contract or changing the form language in its contracts to permit such fees. Dissent at 114-15.[9] Because enforcing state breach of contract law to require Chevy Chase to adhere to its contract terms—terms that are not prohibited by federal regulation—*might* have an indirect effect on Chevy Chase's lending practices, the dissent would preempt the generally applicable state law that sets the groundwork necessary for any meaningful commercial and contractual relationship between Chevy Chase and its customers. The dissent cites no case law or regulation to support the over-expansive interpretation it applies here.

¶20 "Incidental" involves an ancillary or subordinate effect that is an unintended result. *See* BLACK'S LAW DICTIONARY 830 (9th ed. 2009) ("[I]ncidental" defined as "Subordinate to something of greater importance; having a minor role"); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1142 (2002) ("[I]ncidental" defined as "subordinate, nonessential, or attendant in position or significance: as . . . occurring

---

*its contract* with the McCurrys, any effect on the fees is incidental, and thus the state laws are not preempted.

[8] The dissent takes special issue that the McCurrys seek an injunction or declaratory relief. Dissent at 114. However, to the extent the McCurrys seek to have enjoined conduct impermissible under nonpreempted law (i.e., charging fees that are not permitted under the contract terms), that remedy does not run afoul of federal regulation. If warranted by fact and law, enjoining Chevy Chase from charging the challenged fees in breach of its contract has as "incidental" an effect as other remedies.

[9] The dissent asserts it is erroneous to focus on the generally applicable laws' impact on loan-related fees here and instead we should focus on the impact on lending operations generally. Dissent at 113. Loan-related fees are the aspect of lending operations at issue here. The dissent makes broader lending operations relevant here by overextending what qualifies as only an incidental effect.

merely by chance or without intention or calculation"). This definition is consistent with the intent behind 12 C.F.R. § 560.2. OTS "does not intend to preempt basic state laws" but was concerned that "states might place laws purporting to regulate lending-related fees in the portions of state codes dealing with general contract or real property laws in an effort to avoid preemption." 61 Fed. Reg. 50,951, 50,966. Such deceptive legislative labeling would have a direct and primary, not incidental, effect on loan-related fees.

¶21 Here the McCurrys seek to compel Chevy Chase to adhere to contract terms. The generally applicable contract law exists to assure parties adhere to their agreements. Any effect this has on lending operations is unintended, ancillary, and subordinate to the purpose of the contract law. It is, by definition, incidental.

¶22 It is unclear under the dissent how any state law would survive under 12 C.F.R. § 560.2(c) since any claim against a federal savings association involving a loan would "incentivize" and "pressure" it to alter its lending operations to avoid such claims in the future. Dissent at 115. This universal preemption is inconsistent with the language of 12 C.F.R. § 560.2. Subsection (a) initially casts the preemption net as widely as the dissent—"federal savings associations may extend credit as authorized under federal law . . . without regard to state laws purporting to regulate *or otherwise affect their credit activities* . . . ." However, subsection (a) then expressly provides for the "incidental" exception, reining in the expansion language—mirrored by the dissent—that preempts anything that related to lending operations. *See* 12 C.F.R. § 560.2(a) ("except to the extent provided in paragraph (c) . . . .").

¶23 Ultimately, the dissent's novel interpretation of preemption would prevent Washington consumers from enforcing contracts against federal savings associations. Federal law does not provide consumers with a breach of contract remedy against federal savings associations. *See In re Ocwen*, 491 F.3d at 643. Thus, the dissent's interpretation

renders contracts with federal savings associations legally unenforceable.[10] If the federal government intended to preempt general state contract law (which by the language of 12 C.F.R. § 560.2(c) it does not), it would provide a federal remedy to replace individuals' ability to enforce their contracts. If the federal government intended to completely restructure the nature of contracting and render federal savings associations immune to breach of contract claims, it would have explicitly said so.[11]

¶24 Because the state contract law and the CPA, to the extent the CPA claim is based upon the contract, are generally applicable laws with only incidental effect on lending operations, they are not preempted.

## III. Was dismissal appropriate on other grounds?

¶25 Chevy Chase asserts several alternative grounds for dismissal. However, the trial court dismissed based solely on preemption. Since no factual record has yet been developed in the trial court on these alternative grounds for dismissal, consideration of them here is premature.[12]

---

[10] Perhaps the dissent is arguing preemption is warranted here only because the *extensive* nature of the discovery expenditures involved in a *class action* incentivizes Chevy Chase to alter its lending practices to avoid such claims in the future. *See* dissent at 114-15. Then if such expenditures were not extensive, if the McCurrys had brought their lawsuit as individuals, the slight expenditures would provide little to no incentive for Chevy Chase to alter its lending practices, thus dissolving the dissent's basis for preemption. The same generally applicable state law, applied the same way, to the same facts, would avoid preemption if brought as an individual claim rather than a class action. But it is the *law*, and how it is applied, that is preempted; preemption does not operate to exclude only one of two otherwise identical claims because the former will cost more to defend than the latter.

[11] To the extent the dissent argues the reference to field preemption in 12 C.F.R. § 560.2(a) does restructure the nature of contracting and renders federal savings associations immune to breach of contract claims, that same subsection provides, "[F]ederal savings associations may extend credit as authorized under federal law . . . without regard to state laws purporting to regulate or otherwise affect their credit activities, *except to the extent provided in paragraph (c) of this section* . . . ." (Emphasis added.)

[12] The McCurrys raised a hypothetical fact that Chevy Chase may not have actually utilized any notary services in the loan process but still charged a

## CONCLUSION

¶26 Dismissal was improper because the underlying state laws are not preempted. The decision of the Court of Appeals is reversed, and the case remanded to the trial court for further proceedings in conformity with this decision.

MADSEN, C.J., and ALEXANDER, CHAMBERS, FAIRHURST, and STEPHENS, JJ., concur.

¶27 J.M. JOHNSON, J. (dissenting) — In the financial crisis of the Great Depression, the United States Congress, by statute, created an agency to enact rules that expressly "occup[y] the entire field of lending regulation for federal savings associations." 12 C.F.R. § 560.2(a). The federal regulatory system over these banks includes a limited and narrow exception for state laws of general applicability that "only incidentally affect the lending operations of Federal savings associations . . . ." 12 C.F.R. § 560.2(c). Under the supremacy clause of the United States Constitution, article VI, clause 2, all state laws affecting these organizations' lending practices are preempted via field preemption. Because a successful lawsuit by Anne and Chris McCurry and, especially, the national class action they seek to bring would effectively regulate a federal savings bank, the McCurrys' class action claims are preempted. On that basis, the trial court correctly dismissed the McCurrys' claims under CR 12(b)(6). The majority's opinion contradicts this regulatory policy founded on the interstate com-

---

two-dollar notary fee. If this were true, the McCurrys argued, dismissal based on preemption would be inappropriate because, if nothing had been notarized, then the fee could not be considered loan related. *See* Pet. for Review at 18-19, 20. Because contract law and the CPA is not preempted here pursuant to 12 C.F.R. § 560.2(c), this argument is moot. The dissent misapprehends the purpose for which the McCurrys asserted the hypothetical facts and their argument on appeal. The dissent's discussion of the matter is irrelevant here. *See* dissent at 116-17.

merce clause of the United States Constitution, article I, section 8, clause 3, and statutes and regulations enacted by the United States Congress and a federal agency with expressly delegated powers. Therefore, I dissent.

PREEMPTION

¶28 In 1933, Congress enacted the Home Owners' Loan Act (HOLA), 12 U.S.C. § 1461, "to restore the public's confidence in savings and loan associations at a time when 40% of home loans were in default." *Bank of Am. v. City of San Francisco*, 309 F.3d 551, 559 (9th Cir. 2002). HOLA was a regulatory system for banks designed to ameliorate the widespread lack of home-financing services and respond to " 'the inadequacies of the existing state [regulatory] systems.' " *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 159-60, 102 S. Ct. 3014, 73 L. Ed. 2d 664 (1982) (quoting *Conference of Fed. Sav. & Loan Ass'ns v. Stein*, 604 F.2d 1256, 1257 (9th Cir. 1979), *summarily aff'd*, 445 U.S. 921, 100 S. Ct. 1304, 63 L. Ed. 2d 754 (1980)). By federal legislation, the Office of Thrift Supervision (OTS) was empowered to promulgate regulations for this federal system. 12 U.S.C. §§ 1462a, 1463(a), 1464(a).

¶29 Under this authority, OTS has created comprehensive regulation that "occupies the entire field of lending regulation for federal savings associations," which includes Chevy Chase Bank FSB. 12 C.F.R. § 560.2(a).[13] This regu-

---

[13] 12 C.F.R. § 560.2(a) reads in its entirety as follows:

*Occupation of field.* Pursuant to sections 4(a) and 5(a) of the HOLA, 12 U.S.C. 1463(a), 1464(a), OTS is authorized to promulgate regulations that preempt state laws affecting the operations of federal savings associations when deemed appropriate to facilitate the safe and sound operation of federal savings associations, to enable federal savings associations to conduct their operations in accordance with the best practices of thrift institutions in the United States, or to further other purposes of the HOLA. To enhance safety and soundness and to enable federal savings associations to conduct their operations in accordance with best practices (by efficiently delivering low-cost credit to the public free from undue regulatory duplication and burden), OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of

lation preempts all "state laws purporting to regulate *or otherwise affect* their credit activities." *Id.* (emphasis added). However, 12 C.F.R. § 560.2(c) provides that certain generally applicable state laws, including contract and commercial law, are not preempted if "they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section." Thus, any generally applicable state law that has a greater than incidental impact on a federal savings association's lending operations is not enforceable because it is preempted by the federal scheme.

¶30 We give deference to agency interpretations of their own regulations. *Port of Seattle v. Pollution Control Hearings Bd.*, 151 Wn.2d 568, 593, 90 P.3d 659 (2004) (citing *Postema v. Pollution Control Hearings Bd.*, 142 Wn.2d 68, 77, 11 P.3d 726 (2000)). OTS has stated that 12 C.F.R. § 560.2 "paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption." Lending and Investment, 61 Fed. Reg. 50,951, 50,966-67 (Sept. 30, 1996). Further, unlike other areas of federal preemption of state law, there is no presumption against preemption here because there is a significant history of federal regulation of federal savings associations. *See United States v. Locke*, 529 U.S. 89, 108, 120 S. Ct. 1135, 146 L. Ed. 2d 69 (2000). Given (1) the legislative intent of HOLA and OTS's duty to create a flexible, nationwide regulatory system for federal savings associations; (2) the significant history of federal regulation of federal savings associations; and (3) our deference to agency interpretations of their own regulations, we are required to presume preemption and carefully examine any state laws affecting federal savings associations' lending practices.

¶31 Allowing the McCurrys' claims to proceed will have a greater than incidental impact on Chevy Chase. The

---

regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section or § 560.110 of this part. For purposes of this section, "state law" includes any state statute, regulation, ruling, order or judicial decision.

impact is obviously aggravated by the nationwide character of the class action. The majority is correct that our state contract and commercial laws are laws of general applicability. Majority at 104. However, the majority then makes several errors in its analysis. First, the majority focuses on whether these generally applicable laws only incidentally affect loan-related fees.[14] Paragraph (c) is concerned with state law impacts on lending operations generally, not merely loan-related fees. Further, the federal regulation clearly indicates that even laws of general applicability have the potential to have a more than incidental impact on lending practices. Second, the majority states that any effect the McCurrys' lawsuit has on Chevy Chase will be incidental "to the purpose of the contract law." Majority at 108. Again, federal law dictates we focus on whether Chevy Chase's lending operations will be more than incidentally impacted. 12 C.F.R. § 560.2(c). A lawsuit may have a minor impact on contract law or a certain contract while having a substantial impact on lending operations. Finally, the majority improperly limits the definition of "incidental" to something "unintended, ancillary, and subordinate." Majority at 108. The definition of "incidental" also includes the notion of slightness of effect. See WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1142 (2002) ("incidental" definition includes "lacking effect, force, or consequence"). Because federal law requires us to resolve any doubt in favor of preemption, 61 Fed. Reg. 50,951, 50,966-67, we should not omit part of a dispositive word's meaning.

¶32 Even a cursory examination of the likely effects of the McCurrys' suit against Chevy Chase reveal more than incidental impacts on Chevy Chase's lending practices. The

---

[14] The majority incorrectly states "the dispositive issue" for preemption under 12 C.F.R. § 560.2(c) "is whether the generally applicable state law more than incidentally affects [loan-related] fees." Majority at 105; see also majority at 104-05 ("Forcing Chevy Chase to adhere to the terms of its contract only incidentally affects the loan-related fees . . . ."). The majority also suggests state contract and commercial laws have only incidental effects on federal loan operations because they are laws of general applicability. See majority at 104-05, 108. The majority thus further errs in equating general applicability with incidental impact.

conflict is even more obvious if the (sometimes conflicting) laws of many states are applied to national banks. This was the basis for the United States Constitution's commerce clause empowering Congress to regulate interstate commerce, which undoubtedly includes complex, nationwide lending transactions.

¶33 The McCurrys are the named plaintiffs in a putative nationwide class action against Chevy Chase. The subject matter of this suit involves an aspect of Chevy Chase's lending practices relating to fees charged for paying off home loans around the nation. Further, the McCurrys are seeking "an injunction and/or declaratory relief permanently forbidding [Chevy Chase] from committing the practices alleged herein in the future or declaring the same unlawful." Clerk's Papers at 9. If granted, this relief will necessitate alterations in Chevy Chase's lending operations, including fee collection practices and the formatting and content of Chevy Chase's payoff statements.[15] In sum, Chevy Chase's conduct relating to its lending operations and the very forms it uses in those operations will be scrutinized and subjected to a Washington court order commanding that the same be altered if we allow this suit to continue. It is highly erroneous to assert that the resulting impact on Chevy Chase's lending operations will be incidental only. As noted previously, applying the different laws of many states would make for incomprehensible regulation.

¶34 Further, Chevy Chase need not receive an adverse judgment at trial for its lending operations to be impacted

---

[15] In addition to not satisfying the requirements of 12 C.F.R. § 560.2(c), this relief would violate subsection (b), which lists explicit examples of preempted state law. State courts and legislatures cannot impose requirements on the servicing of mortgages or on the content of "billing statements, credit contracts, or other credit-related documents." 12 C.F.R. § 560.2(b)(9), (10). The injunctive relief the McCurrys seek would impose requirements on the content of Chevy Chase's billing- and credit-related documents employed in the servicing of mortgages in violation of federal law. *See, e.g., Rivera v. Wachovia Bank*, No. 09 CV 0433 JM (AJB), 2009 WL 2406301, 2009 U.S. Dist. LEXIS 68391 (S.D. Cal. Aug. 4, 2009) (unpublished) (breach of contract claims preempted by 12 C.F.R. § 560.2(b)(4), (9), and (10)).

in a more-than-incidental manner. The McCurrys envision extensive discovery to determine the composition of their putative nationwide class. This discovery will also doubt-lessly require extensive expenditures on Chevy Chase's part. Other disruptive effects inherent in nationwide class actions, including researching and arguing the nature and impact of state contract, commercial, and consumer protec-tion laws of every applicable state (perhaps all 50), will also induce great expense. These expenses will incentivize Chevy Chase to alter its lending practices, whether those claims are meritorious or not. This kind of pressure is more than incidental on lending activities, and it is irrelevant that the impact is indirect. The federal regulations are clear that state laws, even those generally applicable, are pre-empted if they have a more than incidental impact on federal savings associations' lending operations, and that we should resolve doubt in favor of preemption.

¶35 OTS, not 50 state court (or legislative or agency) systems, has been charged by Congress with regulating and enforcing this category of interstate commerce. Under the supremacy clause, and as other courts have recently con-cluded, we must defer to Congress and OTS.[16] *See, e.g.*, *Rivera v. Wachovia Bank*, No. 09 CV 0433 JM (AJB), 2009 WL 2406301, at *2, 2009 U.S. Dist. LEXIS 68391, at *5 (S.D. Cal. Aug. 4, 2009) (unpublished) (breach of contract claim preempted by HOLA); *Spears v. Wash. Mut., Inc.*, No. C-08-00868 RMW, 2009 WL 2761331, at *4-6, 2009 U.S. Dist. LEXIS 85251, at *13-17 (N.D. Cal. Aug. 30, 2009) (unpublished) (breach of contract claim preempted by HOLA); *Wilkerson v. World Sav. & Loan Ass'n*, No. CIV S-08-2168 LKK DAD PS, 2009 WL 2777770, at *3, 2009 U.S. Dist. LEXIS 76539, at *8 (E.D. Cal. Aug. 27, 2009) (unpublished) (tort claims preempted by HOLA).

---

[16] It is irrelevant whether we are familiar with OTS's procedures for protecting consumers or whether we feel those procedures are adequate. This case is about whether the McCurrys' claims were properly dismissed at trial, not whether OTS regulation is an adequate safeguard. The adequacy of OTS regulation is properly left in the hands of Congress and OTS itself, which are in better positions to take evidence and modify OTS procedures as appropriate.

MOTION TO DISMISS

¶36 Because the McCurrys' claims are preempted, the superior court's dismissal of their claims was proper. However, I further note that the McCurrys attempted to raise a fraud claim in their response to Chevy Chase's CR 12(b)(6) motion by suggesting hypothetical facts that bear no logical relation to the claims raised in their complaint. Because the McCurrys failed to comply with court rules, their fraud claim was improperly raised and any related hypothetical facts provide no basis for the trial court's CR 12(b)(6) decision.

¶37 The McCurrys argued at their CR 12(b)(6) hearing and before this court that Chevy Chase may have fraudulently charged a $2 notary fee when in fact nothing was notarized. However, there is no fraud allegation in their complaint. If the McCurrys had a good-faith belief that fraud occurred, the proper mechanism to include that claim was via a motion to amend their complaint under CR 15, "Amended and Supplemental Pleadings." The burden imposed on amending a complaint under CR 15 is light: a party may amend "once as a matter of course at any time before a responsive pleading is served," or if such a pleading has been served, "by leave of court . . . and leave shall be freely given when justice so requires." CR 15(a).

¶38 Our rules require all claims to be raised in a complaint or amended complaint, not imported under the guise of "hypothetical facts" that bear no relation to the formal complaints in response to a CR 12(b)(6) motion. CR 8, 15. The McCurrys' complaint contends only that Chevy Chase improperly conditioned conveyance of the deed of trust on the McCurrys' payment of notary and fax fees. No mention of fraud exists, so the trial court could not properly consider

hypothetical facts that bear no relation to a fraud claim when considering Chevy Chase's CR 12(b)(6) motion.[17]

CONCLUSION

¶39 Chevy Chase Bank FSB is a national financial institution engaged in complex interstate commerce and headquartered in the Washington D.C./Baltimore metropolitan area. Washington state laws have been preempted, and Washington state courts may not interfere in federally regulated matters of complex, interstate banking commerce. Indeed, our nation's founders realized that regulation of such interstate commerce is best done by the federal government. *See* U.S. CONST. art. I, § 8, cl. 3. In the midst of the Great Depression, Congress passed legislation empowering a federal agency, now OTS, to regulate federal banks and preempting state laws that have greater than incidental impact. These regulations are binding on Washington state laws by virtue of the supremacy clause. U.S. CONST. art. VI, cl. 2.

¶40 The McCurrys' claims are thus preempted because this suit will have more than incidental effects on lending practices of Chevy Chase, a federally regulated bank. I dissent.

C. JOHNSON and OWENS, JJ., concur with J.M. JOHNSON, J.

---

[17] My discussion of CR 12(b)(6) should not be confused with the Fed. R. Civ. P. 12(b)(6) standard articulated by the United States Supreme Court. *See Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). I do not suggest we modify our rule to align with the federal "plausible" standard in our decision today.