[No. 41741-3-II.   Division Two.   October 23, 2012.]

JOANNE PETERSON, *on Behalf of Herself and Others Similarly Situated, Respondent,* v. KITSAP COMMUNITY FEDERAL CREDIT UNION, *Appellant.*

406

*Frank R. Siderius* (of *Siderius Lonergan & Martin LLP*), for appellant.

*Guy W. Beckett* (of *Berry & Beckett, PLLP*) and *Roblin J. Williamson* (of *Williamson & Williams*), for respondent.

¶1 HUNT, J. — Kitsap Community Federal Credit Union (KCU)[1] appeals the superior court's grant of summary

---

[1] Kitsap Community Federal Credit Union is presently known as Kitsap Credit Union, which we refer to as "KCU."

judgment to Joanne Peterson on her Washington Consumer Protection Act (CPA)[2] claim in her class action lawsuit for breach of contract, unjust enrichment, and violation of the CPA. Peterson's CPA claim was based on KCU's having charged her and 428 other plaintiffs an allegedly undisclosed $26 retained profit as part of an $85 "Release Fee (Reconveyance)," which encompassed three charges. Clerk's Papers (CP) at 204. KCU argues that (1) it did not commit an unfair or deceptive act or practice by charging Peterson this $85 "Release Fee (Reconveyance)" because her Deed of Trust included an express covenant that she would pay "recordation costs" and a "reconveyance fee" to KCU when she paid off her loan; and (2) the Federal Credit Union Act[3] and National Credit Union Administration regulations[4] preempt state-law CPA claims on this issue. CP at 489. Peterson cross appeals the superior court's summary judgment dismissal of her breach of contract and unjust enrichment claims and its denial of a class representative incentive award.[5]

¶2 We cannot conclude as a matter of law that KCU committed an unfair or deceptive act or practice under the CPA without (1) knowing the scope or meaning of the undefined Deed of Trust term "reconveyance fee" and (2) then ascertaining whether KCU's payoff statement included nonsecured fees with the fee obligations secured by Peterson's Deed of Trust. Therefore, we reverse the superior court's summary judgment for Peterson on her CPA claim because genuine issues of material fact remain about which portion of KCU's $85 "Release Fee (Reconveyance)" constituted the "reconveyance fee" specified in the Deed of Trust,

---

[2] Ch. 19.86 RCW.

[3] 12 U.S.C. §§ 1751-1795k.

[4] 12 C.F.R. pts. 700-797.

[5] Class representative incentive awards compensate named plaintiffs in class action lawsuits for work done on behalf of the class and in consideration of the risk undertaken in bringing the action. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).

and we remand for trial on this claim. We affirm the superior court's summary judgment dismissal of Peterson's breach of contract and unjust enrichment claims and its denial of a class representative incentive award.

## FACTS

### I. SECURED LOAN AND FEES

#### A. Home Equity Loan, Credit Agreement, and Deed of Trust

¶3 In May 2004, Joanne Peterson obtained a $35,000 Home Equity Credit Line loan from KCU. She signed a preprinted promissory note (Credit Agreement) and a preprinted Deed of Trust; her residential property secured the loan. The Credit Agreement set forth the general terms of the loan and its repayment requirements. Section One provided that Peterson promised to pay KCU

> all amounts [Peterson] borrow[ed] from [KCU] under [the Credit] Agreement, together with Finance Charges, Late Charges, Collection Costs or other charges described herein.

CP at 482. The Credit Agreement did not mention the words "release fee" or "reconveyance fee," that such fees were security for Peterson's loan, or that such fees were a condition on repayment of her loan.

¶4 The Deed of Trust, however, gave KCU a security interest in Peterson's residential property and secured Peterson's repayment of all sums advanced under the Credit Agreement and her performance of all "covenants" and "agreements" set forth in the Deed of Trust and the Credit Agreement.[6] CP at 485. Under the heading "Bor-

---

[6] The Deed of Trust provided, in pertinent part:

This [Deed of Trust] **secures** to [KCU:] (a) the repayment of debt under the [Credit] Agreement with interest, and all renewals, extensions and modifications of the [Credit] Agreement; (b) the payment of all other sums, with interest, advanced under paragraph 5 to protect the security of this [Deed of

rower Covenants," the Deed of Trust also set forth 20 covenants that Peterson was responsible to fulfill. CP at 486. Covenant 18 of this section set forth the conditions under which Peterson's residential property would be "reconvey[ed]" to her:

> **18. Reconveyance.** Upon payment of all sums secured by this [Deed of Trust] and termination of [Peterson's] ability to obtain further advances under the [Credit] Agreement, [KCU] shall request Trustee to reconvey [Peterson's residential property] and shall surrender this [Deed of Trust] and the [Credit] Agreement evidencing debt secured by this [Deed of Trust] to Trustee. Trustee shall reconvey [Peterson's residential property] without warranty to the person or persons legally entitled to it. Such person or persons *shall pay any **recordation** costs and*, as permitted by law, ***shall** pay to [KCU] a **reconveyance** fee*.

CP at 489 (emphasis added). The Deed of Trust did not define "recordation costs" or "reconveyance fee."

## B. Loan Payoff and Reconveyance of Property

¶5  In September 2006, Peterson refinanced her loan and sought to pay off her existing KCU loan secured by the Deed of Trust. Peterson completed a written "Authorization and Instructions to Close PLC"[7] document, which (1) instructed KCU to "accept payoff in full" of her credit line loan from her escrow agent, Land Title Escrow; (2) instructed KCU to close out her account; and (3) asked KCU to "forward the documents necessary for reconveyance to Land Title Escrow, *along with any fees [KCU was] holding for the reconveyance.*" CP at 206 (emphasis added). KCU reviewed Peterson's account information, computed her loan payoff, and "prepared" and "transmitted" her payoff statement to Land Title Escrow. CP at 190.

---

Trust]; **and** (c) the **performance of [Peterson's] covenants** and agreements under this [Deed of Trust] and the [Credit] Agreement.

CP at 485 (emphasis added).

[7] The record does not set forth any words for which "PLC" is an abbreviation.

¶6 This payoff statement itemized three charges, totaling $34,162.49, which Peterson needed to pay KCU to satisfy her loan obligation and to obtain a "release" of the Deed of Trust on her residential property: $33,810.71 principal, $266.78 interest, and an $85.00 "Release Fee (Reconveyance)."[8] CP at 204. Although the payoff statement did not further itemize this latter $85 "Release Fee (Reconveyance)," this "Release Fee (Reconveyance)" comprised three separate charges: (1) $32 recording costs; (2) a $27 fee charged by Trustee Services Inc., KCU's reconveyance processing agent; and (3) a $26 administrative fee that KCU retained as its "processing fee" for the reconveyance.[9] CP at 541. Peterson paid the full payoff statement amount without challenging any of these charges.[10]

¶7 KCU provided Peterson's Deed of Trust information to Trustee Services, which processed the "reconveyance" of Peterson's residential property. CP at 190. Thereafter, KCU corresponded with Trustee Services to obtain a copy of the reconveyance, and KCU checked the county website to ensure that the reconveyance was promptly recorded. When this reconveyance was recorded, KCU released its security interest in Peterson's residential property.

---

[8] The payoff statement also included a handwritten notation that Peterson needed to pay an additional $8.34 for an additional "3 days." CP at 204. It appears that this additional $8.34 was added to the interest on Peterson's loan and that Peterson paid this amount when she fully paid off the loan.

[9] When asked in her deposition what processing expenses KCU incurred that justified a $26 processing fee, KCU Vice President Melinda Anthony responded:

We don't have any other fees. We don't have any fax fees. We don't have any—any fees, period. So the time that it takes for the—to receive the fax, to fax it back, to create the payoff, and have a person actually dedicate time to do that, that's what [justifies] it.

CP at 544.

[10] According to Peterson, when she paid off her loan, she believed that the $85 "Release Fee (Reconveyance)" represented the *actual* amount it cost KCU to have the reconveyance of her property prepared and recorded with the county auditor.

## II. Procedure

¶8 The following year, Peterson sued KCU, alleging breach of contract, unjust enrichment, and violation of Washington's CPA. She also sought class certification to bring her lawsuit on behalf of herself and similarly situated class members. She alleged that (1) KCU had breached its contract with her and with other class members by charging them a general "Release Fee (Reconveyance)" that was not specifically named or authorized in their Deeds of Trust;[11] (2) KCU had been unjustly enriched by receiving such fees; and (3) KCU's charging the "Release Fee (Reconveyance)'s" nonitemized $26 component (which KCU retained as a processing fee) at the time of loan payoff was an "unfair" and "deceptive" practice that violated the CPA.[12] CP at 79.

### A. Summary Judgment Rulings

¶9 KCU moved for summary judgment dismissal of Peterson's claims, arguing that (1) federal law preempted her state law claims because KCU was a "[f]ederally [c]hartered [c]redit [u]nion" under the Federal Credit Union Act and the National Credit Union Administration regulations; (2) KCU's $85 "Release Fee (Reconveyance)," which comprised the three charges, including the "reconveyance fee" specified in the Deed of Trust, was a "loan-related fee" authorized by these federal statutes and regulations; and (3) these federal statutes and regulations "expressly pre-

---

[11] In her complaint and in the proceedings below, Peterson appears to have included the full $85 "Release Fee (Reconveyance)" in her breach of contract and unjust enrichment claims, not just the $26 portion that KCU had retained as a profit or processing fee, which she challenges in her CPA claim. CP at 77.

[12] According to Peterson, (1) KCU did not inform her that it was marking up or making a profit on her reconveyance; (2) had she known that the $85 "Release Fee (Reconveyance)" included a $26 markup or profit for KCU, she would have objected to this additional $26 fee; and (3) this $26 fee was neither permitted nor secured by her Deed of Trust. CP at 248.

empt" any state law purporting to limit or to affect federal credit union loan fees, which Petersen's lawsuit sought to affect. CP at 92, 93.

¶10 KCU further argued that, even if state law applied here, (1) Peterson's breach of contract claim still failed because the Deed of Trust expressly provided that she would pay KCU a "reconveyance fee"; (2) her unjust enrichment claim failed for the same reason and also because KCU provided reconveyance "service[s]" for this fee; and (3) her CPA claim failed because KCU did not engage in an unfair or deceptive act or practice under Washington's CPA. CP at 94. In support of this latter argument, KCU asserts that the Deed of Trust expressly allowed KCU to charge reconveyance fees, such fees are permitted by law, and Peterson had notice from the beginning of her loan transaction with KCU that a reconveyance fee was included in the total amount that the Deed of Trust secured.

¶11 Initially, the superior court granted KCU summary judgment on all of Peterson's claims, dismissing her breach of contract, unjust enrichment, and CPA claims. CP at 231. Later, however, the superior court granted Peterson's motion for reconsideration and reinstated her CPA claim as it related to "imposition . . . of the $26 [processing fee] charge" when she paid off her loan. CP at 288. KCU again moved for summary judgment on Peterson's CPA claim. Again, the superior court concluded that federal law did not preempt Peterson's CPA claim, and it denied KCU's summary judgment motion a second time.

¶12 Peterson then moved for summary judgment on her reinstated CPA claim, arguing that KCU had violated the CPA by charging her a "marked-up 'Release' or 'Reconveyance' Fee, *in excess of the actual expenses KCU incurred* to obtain and [to] record the [r]econveyance, when she paid off [the] loan secured by [her] Deed of Trust." CP at 463 (emphasis added). The superior court granted summary

judgment on Peterson's CPA claim,[13] granted her class certification, and entered a final judgment for Peterson and 428 other class members. The superior court denied her request for a class representative incentive award because (1) she had not made any "[c]ourt appearances," (2) she had not been "depos[ed]" by KCU, and (3) there was "no evidence that [she] would bear any personal liability for any costs incurred" in bringing the lawsuit on behalf of the class. CP at 941.

## B. Appeal and Cross Appeal

¶13 KCU appeals the superior court's reinstatement of Peterson's CPA claim, its granting Peterson summary judgment on her CPA claim, and its final judgment on this CPA claim. Peterson cross appeals the superior court's summary judgment dismissal of her breach of contract and her unjust enrichment claims, the superior court's having denied reconsideration of dismissal of her breach of contract claim, and its denial of her class representative incentive award.

## ANALYSIS

### CONSUMER PROTECTION ACT CLAIM

¶14 KCU argues that the superior court erred in reconsidering its original summary judgment order dismissing Peterson's CPA claim, in reinstating Peterson's CPA claim, and in ultimately granting Peterson summary judgment on her CPA claim because (1) federal law preempts Peterson's state law CPA claim; and (2) it (KCU) did not commit an unfair or deceptive act or practice by charging Peterson the $26 component of its "Release Fee (Reconveyance)," which

---

[13] In its letter ruling, the superior court stated that, in granting Peterson summary judgment on her CPA claim, it focused on the *"undisputed fact* that the Release Fee (Reconveyance) included an *undisclosed charge* in addition to the fee to prepare the Full Reconveyance document and the Kitsap County Auditor's recording fee." CP at 765-66 (emphasis added).

component reflected charges for KCU's own reconveyance-related services independent of those performed by its agent, Trustee Services Inc. We hold that KCU fails to show that federal preemption bars Peterson's state CPA claim but that there are genuine issues of material fact about what charges comprised the "reconveyance fee" in Peterson's Deed of Trust. Accordingly, we reverse the superior court's grant of summary judgment to Peterson on her CPA claim.

## A. Standard of Review

¶15 We review summary judgment orders de novo, performing the same inquiry as the superior court. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 860, 93 P.3d 108 (2004). Summary judgment is appropriate only if the pleadings, affidavits, depositions, interrogatories, and admissions on file demonstrate an absence of any "genuine issue [of] material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c); *see also Davis v. W. One Auto. Grp.*, 140 Wn. App. 449, 456, 166 P.3d 807 (2007). We consider all facts submitted and all reasonable inferences from them in the light most favorable to the nonmoving party. *Marquis v. City of Spokane*, 130 Wn.2d 97, 105, 922 P.2d 43 (1996). If reasonable persons could reach but one conclusion after reviewing all of the evidence, summary judgment is proper. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005).

¶16 We will not reverse a superior court's ruling on a motion to reconsider absent a " 'clear or manifest abuse of . . . discretion.' " *Meridian Minerals Co. v. King County*, 61 Wn. App. 195, 203, 810 P.2d 31 (1991) (quoting *Holaday v. Merceri*, 49 Wn. App. 321, 324, 742 P.2d 127 (1987)). An abuse of discretion exists only if no reasonable person would have taken the view the superior court adopted. *Meridian Minerals Co.*, 61 Wn. App. at 203-04. We review de novo questions of law, including federal preemption issues.

*McCurry v. Chevy Chase Bank, FSB*, 169 Wn.2d 96, 100, 233 P.3d 861 (2010).

## B. Federal Preemption

¶17 KCU argues that federal law preempts Peterson's state law CPA claim because (1) KCU is a "federally chartered credit union" under the Federal Credit Union Act and the National Credit Union Administration regulations; (2) its "Release Fee (Reconveyance)" is a loan-required "term[ ] of repayment" that is associated with "closing costs, application, origination, or other fees" under these laws; and (3) the Federal Credit Union Act and the National Credit Union Administration regulations "expressly pre-empt" any state laws "purporting to limit or affect [f]ederal credit union [terms of repayment]" in these areas. Br. of Appellant at 27, 29, 31. Peterson responds that federal preemption does not apply because (1) KCU has not suffi-ciently explained why its "Release Fee (Reconveyance)," or any portion considered the "[r]econveyance [f]ee" in her Deed of Trust, is a "term of repayment" under these federal regulations or that such fee falls within the category of laws affecting "[c]losing costs, application, origination[,] or other fees"; and (2) her CPA claim falls within a category of laws "related to the transfer of security interests in real prop-erty," which the National Credit Union Administration regulations expressly do *not* preempt. Br. of Resp't/Cross-Appellant at 38, 40. We agree with Peterson.

### 1. Burden of proof

¶18 Congress may preempt state law in three manners, only one of which, express preemption,[14] is at

---

[14] "Express preemption" occurs when Congress "states in explicit terms its intent to preempt state law." *Am. Bankers Ass'n v. Lockyer*, 239 F. Supp. 2d 1000, 1007 (E.D. Cal. 2002).

issue here.[15] *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 265, 884 P.2d 592 (1994). Federal regulations have the same preemptive power as federal statutes. *McCurry*, 169 Wn.2d at 100. As our Washington Supreme Court has repeatedly emphasized, " '[T]here is a strong presumption against finding preemption in an ambiguous case[,] and the burden of proof is on the party claiming preemption,' " here, KCU. *Progressive Animal Welfare Soc'y*, 125 Wn.2d at 265 (first alteration in original) (quoting *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 327, 858 P.2d 1054 (1993)). Under the United States Constitution's supremacy clause,[16] "state laws are *not* superseded by congressional legislation *unless that is the clear and manifest purpose* of Congress." *McKee v. AT&T Corp.*, 164 Wn.2d 372, 387, 191 P.3d 845 (2008) (emphasis added). We hold that federal preemption is not clear and manifest here.

¶19 KCU argues that the presumption against preemption does not apply here because there has been a " 'history of significant federal presence' in national *banking*." Br. of Appellant at 27 (emphasis added) (internal quotation marks omitted) (quoting *Bank of Am. v. City of San Francisco*, 309 F.3d 551, 559 (9th Cir. 2002)). But unlike the federally chartered *bank* at issue in *Bank of America*, KCU does not argue that there has been a comparable history of significant federal presence and preemption in the area of federal *credit union* regulation, which is at issue here.

### 2. Federal credit union laws and regulations

■■ ¶20 Congress enacted the Federal Credit Union Act to regulate federal credit union activities. *Am. Bankers Ass'n v. Lockyer*, 239 F. Supp. 2d 1000, 1018 (E.D. Cal. 2002). This Act authorizes federal credit unions to

---

[15] KCU has argued only that express preemption applies; thus, we limit our analysis to this preemption method.

[16] U.S. Const. art. VI, cl. 2.

make contracts and loans and to issue lines of credit to its members. 12 U.S.C. § 1757(1), (5); 12 C.F.R. § 701.21. The congressional findings section of the Act does not include express preemption language. 12 U.S.C. § 1751. Instead, the express preemption language on which KCU relies for its preemption argument derives from the National Credit Union Administration's regulations. These regulations provide that National Credit Union Administration has the "exclusive authority" to "regulate the rates, *terms of repayment* and other conditions of [f]ederal credit union loans and lines of credit." 12 C.F.R. § 701.21(b)(1) (emphasis added). 12 C.F.R. § 701.21(b)(1)(i)(C) also expressly preempts any state law purporting to *limit* or *affect*: "[c]*losing costs, application, origination, or other fees.*" (Emphasis added.)

¶21 This does not, however, end our federal preemption inquiry because NCUA's regulations also expressly provide that "it is *not* the [National Credit Union Administration's] intent to preempt state laws that do *not* affect rates, terms of repayment and other conditions." 12 C.F.R. § 701.21(b)(2) (emphasis added). Matters falling within this category of nonpreempted state laws include: "[l]aws related to *transfer of and security interests in real and personal property*"; insurance laws; and conditions related to the collection of attorneys fees, requirements that consumer lending documents be in " 'plain language,' " and the circumstances under which a borrower may be declared in default or may cure a default.[17] 12 C.F.R. § 701.21(b)(2)(i)-(iii) (emphasis added). These regulations show that, rather than preempting the entire field of federal credit union lending, Congress intended to leave room for some state regulation of federal credit union activities.

---

[17] These federal regulations also provide that state laws affecting certain aspects of credit transactions that are primarily regulated by federal law other than the Federal Credit Union Act are *not* preempted, but that the "[a]pplicability of state law in these instances should be determined pursuant to the preemption standards of the relevant Federal law and regulations." 12 C.F.R. § 701.21(b)(3). Neither party, however, argues that this provision is at issue.

### 3. No federal preemption of state CPA by 12 C.F.R. § 701.21(b)(1)

¶22 Against this backdrop, KCU argues that 12 C.F.R. § 701.21(b)(1) expressly preempts Peterson's CPA claim because (1) its "Release Fee (Reconveyance)," including its component parts that comprised the Deed of Trust's "reconveyance fee," was a loan-required "term of repayment"; and (2) Peterson's CPA claim purports to limit or affect "closing costs, application, origination, or other fees." Br. of Appellant at 27, 32. These arguments fail.

¶23 First, the National Credit Union Administration's regulations do not define the phrases "term of repayment" or "closing costs, application, origination, and other fees" that KCU relies on here. And KCU does not explain how its "Release Fee (Reconveyance)" qualifies as a "term of repayment" under 12 C.F.R. § 701.21(b)(1). Instead, it baldly asserts that (1) a "reconveyance fee charged by a [f]ederal credit union . . . is a loan fee exclusively within the field of federal regulation," and (2) "[f]ederal banking case law provides that reconveyance fees . . . require the application of the federal preemption doctrine." Br. of Appellant at 31. We hold that KCU has failed to meet its burden to show that federal preemption applies here to preclude Peterson's CPA claim.

¶24 KCU relies primarily on *American Bankers* and argues that its "Release Fee (Reconveyance)" falls within the National Credit Union Administration's broad power to regulate the terms of repayment of credit unit loans and lines of credit because it "addresses the manner (lack of disclosure) in which KCU charged a reconveyance fee." Br. of Appellant at 32. But *American Bankers* did not involve "reconveyance fees" or a "Release Fee (Reconveyance)" similar to the fee KCU charged its customers; and the California law at issue in *American Bankers* more clearly affected the "terms of repayment" of credit unions' loans than does any Washington law that applies here.

¶25 In *American Bankers*, the California legislature had passed a law providing that credit unions and other lending institutions must either (1) require minimum payments of 10 percent of its credit card holders' outstanding balance or refrain from imposing finance charges, *or* (2) place specific warnings on their credit card statements informing card holders about the length of time and the total cost that they would incur if they paid only the minimum amount due on each monthly bill. *Am. Bankers*, 239 F. Supp. 2d at 1002-03. California state law further regulated the placement, typeface, font size, and specific language that these disclosures needed to include, which the credit unions and lending institutions challenged as costly and burdensome. *Am. Bankers*, 239 F. Supp. 2d at 1002-03. The federal district court concluded that the California state law affected the "terms of repayment" of credit union loans and credit lines because it used the credit card statement disclosures as "sanctions" to coerce lenders into imposing a 10 percent minimum payment on credit card statements. *Am. Bankers*, 239 F. Supp. 2d at 1019.

¶26 Contrary to KCU's argument, *American Bankers* does not hold that any state law imposing disclosure requirements necessarily affects the "terms of repayment" of credit union loans and that such laws are automatically preempted by the National Credit Union Administration's regulations. Rather, *American Bankers* appears to hold that the California law affected the "terms of repayment" and was preempted by federal law because it used the credit card statement disclosure requirements as a means of *regulating* the *amount* or the *rate* under which the lending institutions' loans needed to be repaid, which was the exclusive province of Congress to regulate.[18]

---

[18] This interpretation of the phrase "terms of repayment" is consistent with the examples of "[t]erms of repayment" listed in 12 C.F.R. § 701.21(b)(1)(ii), which, again, generally relate to the amount, type, and frequency of credit union loan and interest payments. 12 C.F.R. § 701.21(b)(1)(ii) lists the following as examples of "[t]erms of repayment": (1) the maturity of loans and lines of credit; (2) the amount, uniformity, and frequency of payments, including the accrual of unpaid

¶27 The Washington CPA disclosure requirements do not seek to regulate KCU's ability to charge reconveyance fees, the amounts of such fees, or the rate of Peterson's principal and interest repayments on her loan or any other fees secured under her Deed of Trust. On the contrary, unlike the facts in *American Bankers*, any disclosure requirements that the CPA may have imposed here related directly to Peterson's ability to *enforce* the contractual terms of her Deed of Trust with KCU. We also find enlightening, though not controlling, our Washington Supreme Court's recent decision in *McCurry*, which held that, under similar facts, the plaintiffs' breach of contract/CPA claim challenging a lender's payoff statement that included fax and notary fees not listed as secured fees in their deed of trust was not preempted by federal law.[19] *McCurry*, 169 Wn.2d at 104-05. Peterson's CPA claim primarily challenges whether KCU fraudulently misrepresented the terms of its payoff statement and the fees that she was required to pay under her Deed to trigger KCU's reconveyance of the Deed of Trust on her home. In our view, this case is more like *McCurry* than *American Bankers*. KCU has failed to show that the National Credit Union Administration's regulations preempt Peterson's CPA claim on grounds that it seeks to limit or to affect a "term of repayment" of her loan or credit line.

---

interest if payments are insufficient to pay all interest due; (3) balloon payments; and (4) prepayment limits.

[19] *McCurry* involved similar facts but a different federal statute and regulations, the federal Home Owners' Loan Act (HOLA), 12 U.S.C. § 1461, and its regulations. *McCurry*, 169 Wn.2d at 104-05. The *McCurry* plaintiffs sued their lender for breach of contract and violation of the CPA when the lender's payoff statement included a "fax fee" and a "notary fee" that were not listed as secured fees in their deed of trust. *McCurry*, 169 Wn.2d at 100. The Supreme Court held that the plaintiffs' breach of contract claim was not preempted because it dealt with "generally applicable state laws" and only "incidentally affect[ed]" loan-related fees under HOLA and its regulations. *McCurry*, 169 Wn.2d at 104-05. The court further held that the plaintiffs' CPA claim was not preempted to the extent that their claim stemmed from the contractual terms of the parties' deed of trusts and did not seek to regulate "how" or "when" fax and notary fees could be charged. *McCurry*, 169 Wn.2d at 105. Although the "incidental affects" language is specific to HOLA and it regulations, in our view, the Supreme Court's *McCurry* analysis is analogous to the preemption issues here.

¶28 KCU also fails to show that Peterson's CPA claim is preempted because it seeks to limit or to affect "[c]losing costs, application, origination, or other fees" under 12 C.F.R. § 701.21(b)(1)(i)(C). Other than two nonbinding, unpersuasive National Credit Union Administration opinion letters,[20] KCU offers no support for its argument that 12 C.F.R. § 701.21(b)(1)(i)(C) preempts Peterson's CPA claim because it seeks to limit or affect "[c]losing costs, application, origination, or other fees." Moreover, we agree with Peterson that this 12 C.F.R. § 701.21(b)(1)(i)(C) language applies only to fees that a credit union charges at the *outset* of a loan, not when the loan is paid off.[21]

¶29 KCU has not proven (1) that its reconveyance fee was a "term of repayment," or (2) that Peterson's CPA claim limits or affects "[c]losing costs, application, origination, or other fees" under 12 C.F.R. § 701.21(b). Therefore, its federal preemption argument fails. Accordingly, we hold that federal law does not preempt Peterson's state law CPA claim.

## C. Merits of Peterson's CPA Claim

¶30 KCU argues that Peterson's CPA claim fails as a matter of law because it (KCU) did not commit an unfair or deceptive act or practice by charging its "Release Fee

---

[20] KCU cites two National Credit Union Administration opinion letters, neither of which renders a "definitive opinion" or engages in an express preemption analysis. CP at 417. The United States Supreme Court has held that an agency's interpretations contained in opinion letters do not warrant *Chevron*-style deference. *Christensen v. Harris County*, 529 U.S. 576, 587, 120 S. Ct. 1655, 146 L. Ed. 2d 621 (2000) (referring to the agency deference discussed in *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984)). Instead, agency opinion letters are " 'entitled to respect,' " but *only* to the extent that the interpretations have the " 'power to persuade.' " *Christensen*, 529 U.S. at 587 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S. Ct. 161, 89 L. Ed. 124 (1944)). We find these opinion letters unpersuasive.

[21] For example, the Ninth Circuit has held that "reconveyance fees are assessed *after* the closing, when the mortgage is paid off." *Bloom v. Martin*, 77 F.3d 318, 321 (9th Cir. 1996) (interpreting Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2602(3)). The terms "application" fee and "origination" fee in the regulation are also generally associated with initial mortgage loans.

(Reconveyance)," which KCU refers to as its $85 "[r]econveyance [f]ee." Br. of Appellant at 21-22, 24. More specifically, KCU contends that (1) its Deed of Trust did not have the capacity to deceive borrowers about its right to charge a reconveyance fee; (2) covenant 18 of the Deed of Trust established that Peterson would pay "recordation costs" and a "reconveyance fee" on paying off her loan; and (3) it was neither unfair nor deceptive to condition reconveyance on Peterson's payment of the reconveyance fee and other sums secured by her Deed of Trust, because all sums charged were "fully disclosed" and "express obligations" in the Deed of Trust. Br. of Appellant at 21-22, 24.

¶31 Peterson responds that she proved all the elements of a private CPA claim based on KCU's charging her the $26 component of the "Release Fee (Reconveyance)" that KCU retained as a processing fee because (1) this fee was not secured by her Deed of Trust; (2) KCU "did nothing to justify the charge"; and (3) KCU did not "actually incur" the expense—instead, it retained this fee as a "profit" on the transaction. Br. of Resp't/Cross-Appellant at 25, 29. Although KCU's argument assumes that Peterson is challenging the entire $85 "Release Fee (Reconveyance)," Peterson isolates and targets only the $26 portion of the fee that KCU retained for itself as a processing fee and profit for its reconveyance services; she argues that this $26 fee was not secured under her Deed of Trust and that KCU's conditioning her reconveyance on the payment of this fee violated the CPA.

### 1. Standard of review; burden of proof

¶32 Our state's CPA was enacted in 1961, in part, to protect the public from " 'unfair or deceptive acts or practices in the conduct of any trade or commerce' " and to " 'foster fair and honest competition.' " *Indoor Billboard/ Wash., Inc. v. Integra Telecom of Wash., Inc.*, 162 Wn.2d 59, 73, 170 P.3d 10 (2007) (quoting RCW 19.86.020, .920). We

liberally construe CPA provisions so " 'its beneficial purposes may be served.' " *Indoor Billboard*, 162 Wn.2d at 73 (quoting RCW 19.86.920).

¶33 To prevail in a private CPA claim, a plaintiff must prove an unfair or deceptive act or practice that occurs in trade or commerce, affects the public interest, and causes injury to a person's business or property. *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 37, 204 P.3d 885 (2009) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784, 719 P.2d 531 (1986)). KCU challenges the superior court's grant of summary judgment to Peterson on her CPA claim on only the first element, unfair or deceptive act or practice; therefore, we limit our analysis to this issue.

¶34 When the issue is whether the parties committed a particular act, we review any contested facts under the substantial evidence test. *Indoor Billboard*, 162 Wn.2d at 74. But where there is no dispute about what the parties did, " 'whether the conduct constitutes an unfair or deceptive act can be decided by this court as a question of law,' " which we review de novo. *Indoor Billboard*, 162 Wn.2d at 74 (quoting *Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wn.2d 133, 150, 930 P.2d 288 (1997)).

### 2. Reconveyance fee components—"deceptive"?

¶35 The parties agree that KCU charged Peterson an $85 "Release Fee (Reconveyance)" that comprised three expenses: a $32 charge for recording Peterson's reconveyed Deed of Trust, a $27 administrative charge for Trustee Services' preparing and processing her reconveyance, and a $26 processing charge for KCU's reconveyance services. Covenant 18 of the parties' Deed of Trust required Peterson to pay "recordation costs" and a "reconveyance fee" to KCU when she paid off her loan. The Deed of Trust did not, however, define the term "reconveyance fee," and the parties have offered different interpretations for this term. To

resolve this issue, we address two questions: (1) What constituted the "reconveyance fee," the secured sum provided in the Deed of Trust; and (2) did KCU's bundling three discrete charges into one fee called a "Release Fee (Reconveyance)" and its conditioning reconveyance of Peterson's Deed of Trust upon her payment of the full "Release Fee (Reconveyance)" violate the Deed of Trust or constitute an unfair or deceptive act under the CPA?

¶36 To show that a party has engaged in an unfair or deceptive act or practice that violates the CPA, a plaintiff need not prove that the act in question was " *'intended* to deceive, but that the alleged act had the *capacity* to deceive a substantial portion of the public.' " *Sing v. John L. Scott, Inc.*, 134 Wn.2d 24, 30, 948 P.2d 816 (1997) (emphasis added) (quoting *Hangman*, 105 Wn.2d at 785). The purpose of the capacity-to-deceive test is to deter deceptive conduct *before* injury occurs. *Sing*, 134 Wn.2d at 30. " '[K]nowing failure to reveal something of material importance is "deceptive" within the [meaning of the] CPA.' " *Indoor Billboard*, 162 Wn.2d at 75 (quoting *Robinson v. Avis Rent A Car Sys., Inc.*, 106 Wn. App. 104, 116, 22 P.3d 818 (2001)). Deception exists if there is a representation, omission, or practice that is likely to mislead a reasonable consumer. *Panag*, 166 Wn.2d at 50. In evaluating the tendency of language to deceive, we look " 'not to the most sophisticated [consumers] but rather to the least.' " *Panag*, 166 Wn.2d at 50 (internal quotation marks omitted) (quoting *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1175 (11th Cir. 1985)).

¶37 Division One of our court addressed a factually similar case in *Dwyer v. J.I. Kislak Mortgage Corp.*, 103 Wn. App. 542, 13 P.3d 240 (2000), *review denied*, 143 Wn.2d 1024 (2001). The *Dwyer* plaintiffs purchased a home and financed it through Kislak, which secured the loan with a deed of trust. *Dwyer*, 103 Wn. App. at 544. The deed of trust provided that on payment of the principal, interest, and any late charges, Kislak would "reconvey the deed of trust" to

the plaintiffs, without charge, except for recording costs. *Dwyer*, 103 Wn. App. at 544. When the *Dwyer* plaintiffs refinanced their home through another lender, Kislak provided them with a payoff statement that listed the principal and interest due on their loan, late charges, a recording fee, and a $50 "Misc Service Chgs" fee. *Dwyer*, 103 Wn. App. at 544. Division One held that Kislak's including the "nonsecured" $50 " 'Misc Service Chgs' " fee on the payoff statement, along with the plaintiffs' secured obligations specified in the deed of trust (principal, interest, late fees, and recording fee), was a "deceptive" act under the CPA. *Dwyer*, 103 Wn. App. at 547-48. The court reasoned that inclusion of these additional $50 " 'Misc Service Chgs' " could deceive reasonable consumers into believing that they needed to pay this extra fee before Kislak would release their mortgage or reconvey their deed of trust when, actually, Kislak could not refuse to release their mortgage or to reconvey their deed of trust based on their nonpayment of this unsecured fee without violating the terms of their deed of trust. *See Dwyer*, 103 Wn. App. at 547.

¶38 Like the *Dwyer* plaintiffs, Peterson argues that (1) KCU's payoff statement included an $85 "Release Fee (Reconveyance)," the components of which were not fully disclosed to her; (2) it cost KCU only $59 to obtain and to record the full conveyance on her property, and KCU kept the remaining $26 as pure "profit"; (3) the $26 component of the "Release Fee (Reconveyance)" was not a "secured" sum under her Deed of Trust; but (4) KCU represented to her that she needed to pay this $26 fee in order for KCU to reconvey the Deed of Trust to her. Br. of Resp't/Cross-Appellant at 29, 32.

¶39 In granting summary judgment to Peterson on her CPA claim, the superior court appears to have agreed, as a matter of law, that the $26 component of the "Release Fee (Reconveyance)" was a "hidden fee [that was] not discoverable within the loan documents" and that it was an "undisclosed charge" in addition to the actual fees incurred by

KCU in reconveying Peterson's Deed of Trust and recording the reconveyance. CP at 765, 939. It is not clear, however, on what evidence the superior court relied.

¶40 As we have already noted, in addition to satisfying the principal and interest amounts remaining on her loan, covenant 18 of Peterson's Deed of Trust expressly required her to satisfy *two* other secured amounts: "recordation costs" and a "reconveyance fee." When Peterson sought to pay off her loan, KCU sent her a payoff statement, which listed the principal and interest amounts remaining on her loan and, arguably, a "new fee" called a "Release Fee (Reconveyance)," which fee was not further broken down into components. This $85 "Release Fee (Reconveyance)" comprised *three* charges: recording costs, Trustee Services' administrative fee, and KCU's processing fee. The parties agree that the $32 component of the "Release Fee (Reconveyance)" constituted the secured "recordation costs" included in the Deed of Trust. But it is not clear from the record which of the other two charges ($27 to Trustee Services or $26 to KCU), or *both*, constituted the "reconveyance fee" secured by the Deed of Trust.[22] Thus, there is a question of material fact about whether one of the three charges bundled in the "Release Fee (Reconveyance)" was a

---

[22] Disagreeing about the usage or meaning of the term "reconveyance fee," secured by the Deed of Trust, the parties offer varying interpretations: KCU asserts that it performed "reconveyance services" in addition to those that Trustee Services provided. Br. of Appellant at 20. Peterson does not dispute this assertion; instead she asserts that it was not possible for KCU to "reconvey" her property because (1) it was the Trustee's duty to reconvey her property, not lender KCU's duty; and (2) under RCW 61.24.020, " '[n]o person, corporation or association may be both trustee and beneficiary [lender] under the same deed of trust.' " Br. of Resp't/Cross-Appellant at 30 (quoting RCW 61.24.020).

Peterson's legal arguments are not dispositive because her Deed of Trust also stated that, as permitted by law, she "shall pay lender a reconveyance fee"; this provision clearly obligated her to pay some amount of money to KCU as part of the Deed of Trust's undefined "reconveyance fee." CP at 489. But the Deed of Trust is not clear about whether the "reconveyance fee" was limited to reimbursing KCU for pass-through charges from Trustee Services or whether it also included additional expenses that KCU incurred in preparing the payoff statement and in corresponding with Land Title Escrow and Trustee Services to arrange for processing and recording the reconveyance.

"nonsecured" fee that Peterson did not need to pay in order to obtain reconveyance of the Deed of Trust to her property.

¶41 Moreover, like the "Misc Services Chgs" fee in *Dwyer*, KCU's payoff statement listed the "Release Fee (Reconveyance)" with the other secured obligations from Peterson's Deed of Trust (i.e., the principal and interest remaining on her loan); and the full $85 "Release Fee (Reconveyance)" was included in the total amount that Peterson owed KCU to "pay off" her loan. As Division One held in *Dwyer*, we could hold here that KCU's payoff statement had the capacity to be "deceptive" under the CPA because a reasonable consumer could believe, like Peterson did, that the payoff statement meant she needed to pay the *full* "Release Fee (Reconveyance)," including KCU's previously undisclosed $26 in-house processing fee, before KCU would reconvey the Deed of Trust to her property. In *Dwyer*, however, it was clear that the "Misc Services Chgs" was not a secured obligation under those plaintiffs' deed of trust. In contrast, Peterson's Deed of Trust expressly specified that she would pay "recordation costs" *and* a "reconveyance fee" to KCU.

¶42 Construing the facts in the light most favorable to the nonmoving party, KCU, we hold that there remains a genuine issue of material fact about what constitutes the "reconveyance fee" in the parties' Deed of Trust, which factual issue precludes summary judgment on Peterson's CPA claim.[23] Without knowing what categories of fees and expenses were included in the Deed of Trust term "reconveyance fee," we cannot determine with certainty that KCU's payoff statement mixed "nonsecured" fees with Peterson's secured obligations or that KCU engaged in a deceptive act or practice as a matter of law in violation of the CPA. Accordingly, we reverse the superior court's granting summary judgment to Peterson on her CPA claim.

---

[23] *Go2Net, Inc. v. CI Host, Inc.*, 115 Wn. App. 73, 83, 60 P.3d 1245 (2003) (summary judgment not proper if parties' written contract, viewed in light of parties' other objective manifestations, has two or more reasonable but competing meanings).

¶43 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

WORSWICK, C.J., and JOHANSON, J., concur.